JOURNAL ENTRY AND OPINION
Plaintiff-appellant James W. Powers ("appellant") appeals from the order of the trial court granting summary judgment in favor of defendants-appellees Pinkerton, Inc. and Bartley Kubisen (collectively appellees). For the following reasons, we affirm the judgment of the trial court.
Pinkerton, Inc., a security and investigation services corporation, hired appellant to work in its Cleveland/Akron Banking Division. On April 14, 1991, appellant signed an Employment Acknowledgment form which set forth the terms and conditions of employment with Pinkerton. In particular, the Employment Acknowledgment provided:
* * *
 1. MY EMPLOYMENT BY CCP/PINKERTON IS STRICTLY AN EMPLOYMENT AT WILL TERMINABLE BY EITHER CCP/PINKERTON OR MYSELF AT ANY TIME, IN EITHER PARTY'S SOLE DISCRETION, WITHOUT ADVANCE NOTICE. NO CCP/PINKERTON REPRESENTATIVE HAS AUTHORITY TO MODIFY THIS POLICY. I UNDERSTAND THAT AT NO TIME MAY I RELY ON ANY POLICIES, PROCEDURES, CUSTOMS, AND/OR STATEMENTS, WHETHER WRITTEN OR ORAL, TO CONSTITUTE A MODIFICATION OF THIS EXPRESS CONDITION OF MY EMPLOYMENT.
* * *
 15. I understand and agree to cooperate with the company and its clients in any investigation involving my employment or job performance. Being aware of this need in the security industry, I agree to voluntarily participate in any investigation, interrogation, interview, or any other test or procedure if requested by management. I understand that my failure or refusal to cooperate in any investigation is grounds for termination of my employment.
* * *
Pinkerton immediately promoted appellant to the position of Banking Lieutenant. Thereafter, Pinkerton promoted appellant to the position of Banking Captain. Pinkerton also promoted Bartley Kubisen, appellant's immediate supervisor, to the position of Accounts Manager.
On March 29, 1993, Pinkerton placed appellant on an extended special assignment. During this assignment, Banking Lieutenant Scott Vargo assumed appellant's duties within Pinkerton's Banking Division.
On April 15, 1993, appellant received a telephone call from Jennifer Perelka, an unarmed employee of Pinkerton. During this telephone conversation, Perelka indicated to appellant that she may have been sexually harassed by her armed superior, Sergeant Gary Auerbach. Appellant advised Perelka to tape record Auerbach's behavior the next day.
On April 16, 1993, Perelka paged appellant. When appellant called Perelka, she informed him that she was having serious troubles with Auerbach. Appellant advised Perelka to "hang in there." Appellant then called the Pinkerton office and left messages for Kubisen and District Manager Fred Prassack.
Approximately thirty minutes later, Perelka paged appellant a second time. After listening to her concerns, appellant again called the office and left urgent messages for Kubisen and Prassack.
Shortly thereafter, appellant ran into Perelka and Auerbach at the Society National Bank vault in downtown Cleveland. Perelka informed appellant that she wanted to get away from Auerbach. Appellant advised appellant to "hang in there" because she was almost done with her shift.
At approximately 1:00 p.m. on April 16, 1993, Prassack contacted appellant and told appellant to have Perelka and Auerbach immediately return to the office. By this time, Perelka and Auerbach were already en route to the office.
At the office, Perelka presented Prassack and Kubisen with a handwritten statement and the tape recording. After interviewing Perelka and Auerbach, Prassack and Kubisen immediately terminated Auerbach for violating Pinkerton's sexual harassment policy.
On April 19, 1993, Pinkerton demoted appellant and reduced his hourly pay from $10.00 to $9.50. Kubisen addressed the basis for appellant's demotion in an office memorandum dated April 19, 1993. In this memorandum, Kubisen stated:
 On the evening of Thursday 4/15/93, you were made aware by Officer Perelka that she was alleging that she was being sexually harassed by her supervisor (Sgt. Gary Auerbach). You failed to bring this matter to the immediate attention of the chain of command, Lt. Scott Vargo and PBS Manager Bart Kubisen.
 You superceded the chain of command by contacting Mr. Kubisen's supervisor the next day. If you had contacted Mr. Kubisen in a timely manner this matter could have been resolved with minimal effects to the operations of this office.
 You gave false information to your superior, Bart Kubisen by stating that you were not aware of Officer Perelka's complaint until the morning of Friday, 4/16/93. Evidence shows that you were aware of the complaint on 4/15/93.
 Your failure to bring this matter to the immediate attention of your immediate supervisor resulted in:
 1. The discharge of a competent armed employee. If you have [sic] brought this to the attention of Mr. Kubisen, the employees involved in this matter would have been separated and counseled. Instead you allowed this situation to continue and advised officer Perelka to conceal on her persons [sic] a tape recorder, thereby escalating this situation to the point that a[n] employee was terminated.
 By so doing you have opened Pinkerton's [sic] up to possible litigation should she wish to pursue this matter.
2. Your insubordination by lying to Mr.
 Kubisen concerning your knowledge of this situation.
 3. Causing excessive overtime and undue operational hardship to this office.
 Due to the above mentioned reasons, you are hereby demoted to the position of Responder. You will be assigned to a Settlement team as of this time. You[r] [p]ay rate will be decreased to $9.50 per hour.
On or about May 28, 1993, Pinkerton commenced an investigation and background check of appellant, along with five of his coworkers, when several ATM machines the subject employees were servicing "showed a shortage." As part of this investigation, appellant submitted to a polygraph examination on July 22, 1993.
On February 3, 1994, appellant filed a complaint against appellees in federal court. In his federal case, appellant set forth eleven causes of action, including discrimination in violation of Title42 U.S.C. § 2000e-2, retaliation in violation of42 U.S.C. § 2000e-3, damages for intentional discrimination under42 U.S.C. § 1981a, age discrimination in violation of29 U.S.C. § 621 et seq., and violations of various state law doctrines. In a judgment entry filed on August 11, 1997, the federal court granted summary judgment in favor of Pinkerton and Kubisen on appellant's federal claims. The court dismissed appellant's state law claims without prejudice.
On November 5, 1997, appellant filed a nine-count complaint against appellees in the Cuyahoga County Court of Common Pleas. In his complaint, appellant averred the following causes of action: (1) a statutory retaliation and discrimination claim pursuant to R.C. Chapter 4112; (2) fraudulent misrepresentation; (3) promissory estoppel; (4) defamation; (5) invasion of privacy; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) a statutory whistle blower retaliation claim pursuant to R.C. 4113.52; and (9) a common law tort claim for retaliation in violation of the public policy underlying R.C. 4113.52.
On December 3, 1997, appellees filed a motion to dismiss. In a journal entry dated January 23, 1998, the trial court converted appellees' motion to dismiss to a motion for summary judgment. On March 29, 1999, the trial court issued a thirty-seven page ruling on appellees' motion for summary judgment wherein the trial court granted summary judgment in favor of Pinkerton and Kubisen on the nine causes of action in appellant's complaint. Therefrom, appellant filed a timely notice of appeal with this court.[1]
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES UPON APPELLANT'S CLAIM FOR INTENTIONAL RETALIATION AND DISCRIMINATION UNDER R.C. § 4112.02, ET SEQ., ON THE STATED BASIS THAT APPELLANT FAILED TO REBUT THE APPELLEES' ALLEGED SHOWING OF A LEGITIMATE, NON-DISCRIMINATORY BUSINESS PURPOSE FOR THEIR ADVERSE EMPLOYMENT ACTIONS.
In his first assignment of error, appellant claims that the trial court erred in granting summary judgment in favor of appellees on appellant's R.C. 4112.02(I) retaliation claim
Civ.R. 56(C) provides that summary judgment is proper if the trial court determines that: "`(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485, quoting Templev. Wean United, Inc. (1977), 50 Ohio St.2d 317.
Pursuant to Civ.R. 56(E), if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden "to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmovant may not rest upon mere allegations or denials but, rather, must set forth specific facts and present some evidence with respect to those elements which the nonmovant must establish at trial. Civ.R. 56(E); Celotex Corp. v. Catrett (1986),477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.
R.C. 4112.02(I) provides:
It shall be an unlawful discriminatory practice:
 (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.
In order to establish a prima facie case of retaliation under R.C.4112.02(I), appellant was required to prove the following elements: (1) appellant engaged in protected activity; (2) Pinkerton knew of appellant's participation in the protected activity; (3) Pinkerton engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action. Chandler v. Empire Chem., Inc., MidwestRubber Custom Mixing Div. (1994), 99 Ohio App.3d 396, 402.
Where a claimant establishes a prima facie case of retaliatory discharge, the burden shifts to the defendant to articulate a legitimate reason for its action. Chandler, supra. If the defendant carries that burden, the burden is shifted back to the claimant to show that the articulated reason is merely a pretext. Id.
"A reason cannot be proved to be `a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks (1993), 509 U.S. 502,510-511. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co. (C.A.10, 1988), 853 F.2d 768, 772. To avoid summary judgment, appellant was required to produce some evidence that Pinkerton's proffered reasons were factually untrue. Reeves v. Sanderson Plumbing Products, Inc. (2000), 530 U.S. 133,120 S.Ct. 2097, 147 L.Ed.2d 105. Simply put, appellant failed to satisfy his burden in this regard.
"Ohio courts will grant summary judgment to the employer even if the employee establishes a prima facie case, if the employee presents no evidence to rebut the employer's legitimate nondiscriminatory reason."Borowski v. State Chemical Mfg. Co. (1994), 97 Ohio App.3d 635, 641. Assuming arguendo that appellant established a prima facie case of retaliation, Pinkerton has articulated at least three legitimate business reasons for demoting appellant.
First, Pinkerton submits that it demoted appellant because he failed to immediately notify Pinkerton of Perelka's sexual harassment claims and, instead, conducted his own investigation. Pinkerton insists that appellant's actions violated the procedures of the company's sexual harassment policy. Pinkerton's Policy Against Harassment states in pertinent part:
 All supervisors and/or management will immediately report any incidents of sexual harassment to the District Manager or Regional Vice President. * * *
(Emphasis added.)
Appellant imports the fact that Pinkerton placed him on an extended special assignment on March 29, 1993. Appellant emphasizes that he was not Perelka's supervisor on April 15, 1993, and, therefore, he did not violate the expressed terms of Pinkerton's policy against harassment.
We agree with appellant that he did not violate the expressed terms of Pinkerton's sexual harassment policy by failing to immediately report Perelka's claims. However, Pinkerton offered two other nondiscriminatory reasons for demoting appellant. As a legitimate business reason for appellant's demotion, Pinkerton has also asserted that appellant placed Perelka in unnecessary danger by advising her to go into the field and tape record her harasser, an armed supervisor. Appellant fails to dispute the substance of this contention and, instead, merely notes that Kubisen did not initially include this justification in the office memorandum, dated April 19, 1993, which addressed appellant's demotion.
In addition, Pinkerton submits that appellant provided false information to his superiors when he represented that he was unaware of Perelka's allegations until April 16, 1993. Appellant attempts to counter this rationale by arguing that he did not know the specifics of Perelka's claims until the next day. Notwithstanding, the record clearly shows that Perelka informed appellant of her basic allegations on April 15, 1993. Providing a superior with misinformation is a form of insubordination. It is well-established that insubordination is a legitimate and nondiscriminatory reason for adverse employment action. See Hood v.Diamond Products, Inc. (1996), 74 Ohio St.3d 298, 302.
Faced with summary judgment, appellant failed to offer sufficient evidence that all three of Pinkerton's justifications for his demotion were pretext and, moreover, failed to even raise an inference that retaliation actually motivated this decision. After thorough review of the record on appeal, we find that the trial court did not err in granting appellees' motion for summary judgment on appellant's R.C.4112.02(I) retaliation claim. Appellant's first assignment of error is overruled.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT APPELLANT'S COUNT IX CLAIM FOR THE COMMON LAW TORT OF WRONGFUL RETALIATORY ACTION IN VIOLATION OF THE PUBLIC POLICY UNDERLYING R.C. § 4113.52 WAS TIME-BARRED.
In his second assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees on appellant's claim for the common law tort of wrongful retaliatory action against a whistle blower in violation of the public policy.
Appellant insists that he was entitled to maintain against his employer an independent common law cause of action based upon the public policy underlying R.C. 4113.52, without regard to the statute of limitations in R.C. 4113.52(D). In Greeley v. Miami Valley Maintenance Contractors
(1990), 49 Ohio St.3d 228, the Supreme Court of Ohio held, "Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." Id. at paragraph one of the syllabus.
"An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer * * *, so long as that employee hadfully complied with the statute and was subsequently discharged ordisciplined." Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, paragraph three of the syllabus (emphasis added).
At the trial court level, appellant only proffered one source of expressed public policy prohibiting the alleged retaliatory action, R.C.4113.52.[2] As the court noted in Kulch:
 * * * However, the public policy embodied in the Whistle blower Statute is limited. By imposing strict and detailed requirements on certain whistle blowers and restricting the statute's applicability to a narrow set of circumstances, the legislature clearly intended to encourage whistleblowing only to the extent that the employee complies with the dictates of R.C. 4113.52. As we held in Contreras, supra, 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus: "In order for an employee to be afforded protection as a `whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute."
 * * * The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a Greeley claim solely upon the public policy embodied in that statute.
Id. at 153.
In the instant case, appellant claims to have been wrongfully discharged for having reported sexual harassment. However, as discussed in our analysis of appellant's third assignment of error, appellant did not strictly comply with the requirements of R.C. 4113.52. In particular, appellant failed to file his whistleblower retaliation claims within one hundred eighty days as required by R.C. 4113.52(D).[3]
Accordingly, appellees were entitled to summary judgment on appellant's public policy claim. Appellant's second assignment of error is overruled.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT COUNT VII OF APPELLANT'S COMPLAINT, SETTING FORTH A STATUTORY CLAIM FOR WRONGFUL RETALIATORY DISCIPLINE UNDER R.C. S 4113.52, WAS TIME-BARRED, DESPITE APPLICABLE PRINCIPLES OR EQUITABLE TOLLING AND EQUITABLE ESTOPPEL.
In his third assignment of error, appellant maintains that the trial court erred in granting summary judgment in favor of appellees on appellant's R.C. 4113.52 whistleblower retaliation claim.[4] Appellant acknowledges that he failed to pursue this claim within one hundred eighty days as required by R.C. 4113.52(D). However, appellant alleges that he did not immediately commence litigation because Pinkerton representatives promised to investigate his complaints. Therefore, appellant insists that the doctrines of equitable estoppel and equitable tolling should be applied to toll the limitations period.
The doctrines of equitable estoppel and equitable tolling may be employed to prohibit inequitable use of the statute of limitations. See, e.g., Livingston v. Diocese of Cleveland (1998), 126 Ohio App.3d 299,314. In order to establish equitable estoppel, a plaintiff must demonstrate that: (1) the defendant made a factual misrepresentation; (2) it was misleading; (3) it induced actual reliance which was reasonable and in good faith; and (4) it caused detriment to the relying party. Id.
A plaintiff relying on equitable estoppel must show "actual or constructive fraud." Id. The plaintiff must show: (1) "an affirmative statement that the statutory period to bring an action was larger than it actually was"; (2) "promises to make a better settlement of the claim if plaintiff did not bring the threatened suit"; or (3) "similar representations or conduct. Id. at 315.
We find that the representations by Pinkerton employees Richard Robinson, Larry Jorgenson and Carlos Maulina, viz., that Pinkerton would investigate appellant's complaints, do not demonstrate an intent to mislead appellant or prevent a timely lawsuit. The only representation that could have possibly satisfied the requirements of equitable estoppel was the request by Denise McGorrin, an attorney representing Pinkerton, asking appellant's attorney to "refrain from filing suit until she had a chance to investigate and make a determination into the merits of [plaintiff's] complaint." However, McGorrin allegedly made this request in December of 1993 or January of 1994, after expiration of the statute oflimitations.
Based upon the foregoing, we find that the doctrines of equitable estoppel and equitable tolling do not excuse appellant's failure to file his statutory whistleblower retaliation claim within one hundred eighty days pursuant to R.C. 4113.52(D). The trial court did not err in granting appellees summary judgment in this regard. Accordingly, appellant's third assignment of error is overruled.
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT FOR APPELLEES AS TO COUNTS VI AND VII OF APPELLANT'S COMPLAINT, RELATING TO HIS CAUSES OF ACTION FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.
In his fourth assignment of error, appellant contends that the trial court erred in granting summary judgment in favor of appellees on appellant's intentional and negligent infliction of emotional distress claims.
Initially, we note this court has refused to recognize a separate tort for negligent infliction of emotional distress in the employment context. See Tschantz v. Ferguson (1994), 97 Ohio App.3d 693, 724. AccordStrawser v. Wright (1992), 80 Ohio App.3d 751, 754; Hatlestad v. Consol.Rail Corp. (1991), 75 Ohio App.3d 184, 191; Hanly v. Riverside MethodistHosp. (1991), 78 Ohio App.3d 73, 83; Antalis v. Ohio Dept. of Commerce
(1990), 68 Ohio App.3d 650, 653; ad nauseam. As such, appellant's negligent infliction of emotional distress claim does not merit further consideration.
In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it. See Takach v. Am. Med. Technology, Inc. (1998), 128 Ohio App.3d 457,471.
In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-375, the Supreme Court of Ohio adopted Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment d, which states:
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Applying this standard to appellant's allegations, we find that appellees' conduct, even if tortious and intentional, was not of the extreme nature required for an actionable intentional infliction of emotional distress claim. Consequently, the trial court did not err in granting summary judgment in favor of appellees on appellant's intentional infliction of emotional distress claim. Appellant's fourth assignment of error is overruled.
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT UPON COUNT II OF APPELLANT'S COMPLAINT FOR THE STATED REASON THAT APPELLANT HAD ALLEGEDLY FAILED TO MEET HIS BURDEN OF PROOF AS TO HIS CLAIM OF FRAUDULENT MISREPRESENTATION.
As for his fifth assignment of error, appellant claims that the trial court erred in granting summary judgment to appellees on appellant's fraudulent misrepresentation claim.
To prove fraudulent misrepresentation, a plaintiff must establish each of the following elements: (1) a representation; (2) which is material; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the representation; and (6) a resulting injury proximately caused by the reliance. Cardi v. Gump
(1997), 121 Ohio App.3d 16, 22. "All of these elements must be present if actionable fraud is to be found. The absence of one element is fatal to recovery." Westfield Ins. Co. v. HULS Am., Inc. (1998),128 Ohio App.3d 270, 296.
As a general rule, fraudulent misrepresentation claims are predicated on past or existing facts, and not on promises or representations relating to future actions or conduct. Williams v. Edwards (1998),129 Ohio App.3d 116, 124. "Representations as to what will be performed or will take place in the future are regarded as predictions and are not fraudulent * * *." Tibbs v. Natl. Homes Constr. Corp. (1977),52 Ohio App.2d 281, 286. A representation relating to future conduct constitutes an actionable fraudulent misrepresentation only where an individual makes a promise concerning his future conduct and, at the time he makes it, he has no intention of keeping the promise. Williams, at 124.
Appellant bases his fraudulent misrepresentation claim on allegations that various Pinkerton employees promised appellant that they would investigate his complaints and concerns. The trial court delineated appellant's accusations of fraudulent misrepresentation as follows:
 1. On May 19, 1993, Regional Vice President Richard Robinson told plaintiff that he would "investigate all items addressed, discussed and documented by plaintiff."
 2. On September 13, 1993, Vice-President Larry Jorgenson told plaintiff that "his complaints were serious and important" and that "Human Resources would bring him in and make a report and get back in touch with him."
 3. On November 5, 1993, Human Resources employee Carlos Maulina told plaintiff that he would be "looking into the manner" "that he was awaiting a letter from plaintiff's counsel with information on the complaints" and that "when he received that letter the issues would be diligently and appropriately pursued."
 4. In late December of 1993/January of 1994, Denise McGorrin told plaintiff that he would be dealt with fairly."
 5. In late December of 1993/January of 1994, Denise McGorrin asked plaintiff's counsel to "refrain from filing suit until she had a chance to investigate and make a determination into the merits of [plaintiff's] complaint."
The challenged statements were promises relating to future actions or conduct and, therefore, actionable only if appellant demonstrated that, at the time of the statements, the declarants had no intention of keeping the promises. Faced with summary judgment, appellant failed to present any evidence of the declarants' "present intention not to perform" when the representations were made. Appellant merely demonstrated that Pinkerton failed to fulfill the promises of its employees.
In Wall v. Firelands Radiology, Inc. (1995) 106 Ohio App.3d 313, the Sixth Appellate District stated:
 "In order to be the basis for an action for fraud, however, the alleged misrepresentation cannot be predicated simply upon a promise to perform that subsequently is unfulfilled. Rather, the plaintiff must prove by a preponderance of the evidence, that at the time the promise to perform was made, the promisor did not intend to fulfill the promise. (Citation omitted.) The `mere proof of nonperformance does not prove a lack of intent to perform.'" (Citation omitted and emphasis sic.) See, also, Internatl. Travel Arrangers v. NWA, Inc.
(C.A.8, 1993), 991 F.2d 1389, 1403:
 "`[F]raud cannot be predicated upon the mere fact that a promise has been broken * * *. There must be evidence to justify a trier of fact in concluding that, when the promise was made, there was no intention of performing it * * *. It would be as wrong morally as legally, as offensive to logic as to law, to hold that mere denial and nonperformance are evidence that, if a promise was made, it was made fraudulently * * *. Bad, indeed, would be the case of the honest man who has made no such promise if, when falsely charged with it, he may not deny it without having his truth considered as some evidence either that there was such undertaking or that it was deceitfully made.'" (Citations omitted.) Accord Murray v. Xerox Corp. (C.A.2, 1987), 811 F.2d 118, 122.
Id. at 326, quoting the Lightning Lube, Inc. v. Witco Corp. (C.A.3, 1993), 4 F.3d 1153, 1186.
Appellant insists that the evidence at least raises an inference that Pinkerton's management had the intention to mislead. In particular, appellant postulates that Pinkerton's representatives made the promises to appellant to lull him "into a false sense of security in hopes that he would delay in commencing litigation until a statute of limitations defense might be established."
However, the record demonstrates that appellant was represented by counsel when some, if not most, of these representations were allegedly made. Under these circumstances, any delay in litigation would not constitute justifiable reliance on fraudulent misrepresentations but, rather, would indicate a legal malpractice claim against appellant's attorney. As for the representations made before appellant was represented by counsel, appellant fails to direct this court to any evidence that the declarants had no intention to investigate when they made these promises.
Based upon the foregoing, we find that appellant failed to establish a viable claim of fraudulent misrepresentation. The trial court did not err in granting appellees' motion for summary judgment in this regard. Appellant's fifth assignment of error is overruled.
 VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON APPELLANT'S CAUSES OF ACTION FOR DEFAMATION AND INVASION OF PRIVACY.
In his final assignment of error, appellant argues that the trial court erred in summarily dismissing his claims of defamation and invasion of privacy.
The elements of defamation are: (1) "that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement." Pollock v. Rashid (1996),117 Ohio App.3d 361, 368; Kassouf v. White (March 2, 2000), Cuyahoga App. No. 75446, unreported.
As a general rule, the expression of opinion will not subject a party to liability for defamation. See Scott v. News-Herald (1986),25 Ohio St.3d 243, 250. "The totality of the circumstances must be examined to determine whether a published statement is constitutionally protected opinion." Id. at paragraph one of the syllabus. The factors to be examined include: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared. Id. at 250. The determination of whether a challenged statement constitutes opinion or fact is a question of law for the court to decide. Id.
On appeal, appellant continues to insist that two comments by Kubisen were defamatory. First, Kubinsen allegedly referred to appellant as an "asshole" in the presence of other people. Kubinsen allegedly uttered the second challenged comment during an elevator ride with appellant and John Hurby. When Hurby asked if appellant could pick his arms up, Kubinsen allegedly cracked, "[h]e can't get it up all the way, that's what his wife said."
We find that appellant failed to produce any evidence to support the contention that the "asshole" comment was a false statement of fact. As the trial court noted, Kubinsen was merely expressing his unverifiable opinion of appellant. Although verifiable and definitely insulting, Kubinsen's quip regarding appellant's sexual potency was obviously offered in jest and not as a statement of fact.
Upon review of the challenged comments, we find that the trial court did not err in granting summary judgment in favor of appellees on the fourth count of appellant's complaint.
In the fifth count of his complaint, appellant averred an invasion of privacy claim. "An actionable invasion of the right of privacy [includes] * * * the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Rogers v. Buckel (1992),83 Ohio App.3d 653, 658.
On or about May 28, 1993, Pinkerton launched an investigation of appellant and five other employees because several ATM machines the subject employees were servicing "showed a shortage." Pinkerton ordered a background check and appellant voluntarily submitted to a polygraph examination. As the trial court noted, the investigation of an employee under these circumstances is appropriate, reasonable and necessary. Accord Tohline v. Central Trust Co. (1988), 48 Ohio App.3d 280, 285
(Investigation by employer "does not constitute a wrongful intrusion where the appellant's activities potentially cast a pall on his trustworthiness at work.").
The trial court also noted that appellant signed an Employment Acknowledgment form which set forth the terms and conditions of employment. Pursuant to section 15 of the form, appellant agreed to voluntarily cooperate with any investigation. Based upon the unique nature of the security industry, we find as a matter of law that Pinkerton's investigation does not translate into an actionable claim for invasion of privacy.
The trial court did not err in granting summary judgment in favor of appellees on the fifth count of appellant's complaint. Appellant's sixth assignment of error is overruled.
The judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J. CONCURS IN JUDGMENT ONLY;
DIANE KARPINSKI, P.J. CONCURS IN IN PART AND CONCURS IN JUDGMENT ONLY IN PART. (See Concurring Opinion Attached).
[1] We initially note that throughout his appellate brief, appellant claims to incorporate by reference briefs filed with the trial court. This is nothing more than an attempt to circumvent the forty page limit imposed by Loc.App.R. 16(A). Pursuant to App.R. 16, arguments are to be presented within the body of the merit brief. Therefore, we will disregard any argument not specifically and expressly addressed in the appellate briefs. Accord Williams v. Waller (Dec. 26, 1996), Cuyahoga App. No. 69069, unreported.
[2] For the first time on appeal, appellant asserts that his common law tort claim was also based upon the public policy underlying R.C. Chapter 4112. This court has consistently refused to address arguments for the first time on appeal. See, e.g., BP Communications Alaska, Inc. v.Central Collection Agency (Mar. 9, 2000), Cuyahoga App. No. 75788, unreported, citing L.B. Folding Co. v. Gergel-Kellman Corp. (1994),94 Ohio App.3d 511, 521.
[3] Appellees also claim that appellant failed to file a written report as required in R.C. 4113.52(A)(1)(a). However, appellant's self-serving testimony was sufficient to create a genuine issue of material fact in that regard.
[4] Appellees assert that appellant's statutory whistleblower retaliation claim is barred by the doctrine of res judicata. In the previously filed federal case, the judge held that equitable estoppel did not excuse appellant's failure to file his EEOC charge within threehundred days. The federal court never discussed the application of equitable estoppel to appellant's R.C. 4113.52 claim. Res judicata
applies only where there is an identity of issues. See Johnson v. Norman
(1981), 66 Ohio St.2d 186, 190. Therefore, we summarily reject appellees' res judicata defense without further discussion.