**WILLIAMS et al. Appellants,**

v.

**EDWARDS et al., Appellees.**

[Cite as *Williams v. Edwards* (1998), 129 Ohio App.3d 116.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–970679 and C–970822.

Decided July 17, 1998.

*Denise C. Lee,* for appellants.

*J. Paul Allen* and *Jill M. Vollman,* for appellees.

*Per Curiam.*

Plaintiffs-appellants, Joseph and Danny Williams, brothers, appeal the judgment of the trial court awarding them $11,966.75 in damages on their claims for breach of contract, breach of warranty, and negligence, but dismissing their claims for fraud and violations of the Ohio Consumers Sales Practices Act ("CSPA"). The Williamses also appeal the trial court's order granting them $742.10 in prejudgment interest.

## FACTS AND PROCEEDINGS

Defendant-appellant Keesh Edwards is the sole proprietor of Keesh Construction Company, which performs commercial, residential, and industrial construction work. In 1993, the city of Cincinnati hired Edwards to realign Guerley Road and to perform other improvements, including the installation of a storm-sewer pipe, a water main, and new sidewalks, curbs, and pavement. This project called for substantial excavation of fill dirt, which Edwards initially dumped at a church approximately five miles away. During the project, however, it became necessary for Edwards to find an alternative dumpsite for the fill dirt. At that time, Edwards and the Williamses, owners of a home on Guerley Road, became acquainted and began to discuss the possibility of Edwards dumping the excess fill dirt in their yard. In March 1994, Edwards and the Williamses entered into a written contract whereby Edwards agreed to perform the following improve-

ments to the Williamses' yard in exchange for their permission to dump fill dirt in their yard: (a) replacing the driveway; (b) upon completion of the dumping, adding topsoil, grass seed, and straw to the area filled; (c) replacing surveyor's stakes; (d) grading the area of fill; (e) fixing and replacing anything on the property that was damaged by the dumping operation; and (f) extending the four-inch corrugated pipe to the extent of the fill and ensuring that it drained properly. In addition, Edwards entered into nearly identical contracts with several of the Williamses' neighbors.

Pursuant to his agreement with the Williamses, Edwards dumped fill dirt in the Williamses' yard until completion of the Guerley Road project, sometime in the fall of 1994. Thereafter, his crew performed the agreed improvement work. This work, however, did not meet with the Williamses' satisfaction. They alleged that Edwards improperly installed the corrugated pipe, failed to ensure that it drained properly, installed the driveway at a steeper and higher elevation that resulted in flooding and drainage problems, failed to grade the yard to their satisfaction, failed to perform the topsoil, seeding, and straw services in a workmanlike manner, and failed to pay for damage done to their house by the work crew.

In February 1996, the Williamses filed a complaint against Edwards, asserting breach of contract, breach of warranty, negligence, fraud, and violations of the CSPA. Edwards answered the complaint and asserted a counterclaim for unjust enrichment. In June 1997, the case was tried to the bench. The trial court dismissed the Williamses' CSPA and fraud claims, as well as Edwards's claim for unjust enrichment, but granted judgment in favor of the Williamses on all remaining claims and awarded them $11,966.75 in damages. Thereafter, the trial court granted, in part, the Williamses' motion for prejudgment interest, awarding them $742.10. The Williamses timely appeal[1] the trial court's judgments and bring seven assignments of error.

## THE ASSIGNMENTS

In their first assignment of error, the Williamses assert that the trial court erred in dismissing their CSPA claim based on its determination that the Act was inapplicable to their case. Because we agree that the trial court's dismissal of the Williamses' CSPA claim under Civ.R. 41(B)(2) was erroneous as matter of law, we sustain this assignment of error.

During the examination of the Williamses' first witness, the trial court questioned counsel as to the applicability of the CSPA and stated:

---

1. Appeal Nos. C–970822 and C–970679 have been consolidated by order of this court.

"[The Williamses] were not after a new driveway. In other words, there is no consumer involved in this. * * * This whole agreement is based on dumping dirt, and the agreement itself, short as it is, indicates that in return for * * * Edwards' dumping, he's going to be sure that the driveway is fixed, and then he's going to do the seeding and the other responsibilities that he assumed after that. That is not a consumer transaction."

Based on its determination that the contract at issue did not constitute a consumer transaction, the trial court concluded that it would not allow the Williamses to go forward with the CSPA claim and therefore barred them from presenting further evidence relating to the CSPA claim. Then, at the conclusion of the Williamses' case-in-chief, Edwards moved for dismissal of the CSPA claim under Civ.R. 41(B)(2). The trial court granted this motion and dismissed the claim.

Civ.R. 41(B)(2) allows the trial court to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief.[2] A dismissal under this rule will be set aside on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence.[3]

We begin by examining R.C. Chapter 1345, Ohio's Consumer Sales Practices Act. A violation of the CSPA is premised on the existence of a supplier, a consumer, and a consumer transaction.[4] R.C. 1345.01(A) defines "consumer transaction" as:

"a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."

R.C. 1345.01(C) defines "supplier" as:

"a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."

Finally, R.C. 1345.01(D) defines "consumer" as:

"a person who engages in a consumer transaction with a supplier."

---

2. *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 62–63, 571 N.E.2d 442, 444.

3. *Id.*

4. See R.C. 1345.02 and 1345.03.

Thus, our determination whether the instant contract constitutes a consumer transaction is dependent upon whether Edwards was a supplier who sold or transferred goods or services to the Williamses for primarily personal, household, or family purposes.

The trial court reasoned, and Edwards agrees, that the fact that the Williamses were not "in the market" for a new driveway prior to the time that they entered into the contract provided a basis for concluding that the contract did not amount to a consumer transaction. But, considering that the CSPA itself contains no requirement that an individual be actively seeking the goods or services that the individual ultimately agrees to receive, we find this reasoning to be completely unpersuasive. This is especially true given that the CSPA applies to home solicitations,[5] which are most often initially *un*solicited by the individual who later becomes the purchaser. Thus, we reject this argument.

Further, the view of both Edwards and the trial court that the contract was not a consumer transaction appears to stem from the proposition that it did not involve a transfer of services for purposes that were primarily personal, family, or household. We are, however, equally unpersuaded by this argument. This court and others have held that similar contracts for improvements to one's residential property are covered by the CSPA, as they involve the sale or transfer of services for personal use.[6] In light of these cases and our review of the record in this matter, we conclude that the instant contract was a transfer of goods and services that were intended for the Williamses' personal use. As such, it was a consumer transaction.

Edwards also argues that the CSPA is inapplicable because he was not a supplier under the Act. He reasons that he was not a supplier because, at the time he entered into the contract with the Williamses, he was performing a *commercial* contract for the city of Cincinnati and was not, therefore, in the business of effecting or soliciting *consumer* transactions. Evidently, Edwards views his contracts with the Williamses and their neighbors as incidental to his

---

5. R.C. 1345.21 through 1345.28.

6. *Beck v. Trane Co.* (Dec. 19, 1990), Hamilton App. Nos. C–890610 and C–890623, unreported, 1990 WL 209688 (sale of heating and air-conditioning unit is a consumer transaction); *Rosenfield v. Tombragel* (Dec. 31, 1996), Hamilton App. No. C–950871, unreported, 1996 WL 741988 (home-improvements contract is a consumer transaction); *Collins v. Kingsmen Enterprises, Inc.* (Jan. 19, 1995), Cuyahoga App. No. 66433, unreported, 1995 WL 23345 (CSPA applies to home-improvements contracts); *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman* (1992), 83 Ohio App.3d 53, 613 N.E.2d 1083; *Martin v. Bullinger* (1988), 43 Ohio App.3d 136, 539 N.E.2d 681 (CSPA applicable to repair of gas leak); *Myers v. Curt Bullock Builders* (Sept. 4, 1991), Summit App. No. 14994, unreported, 1991 WL 172418 (garage and driveway installation is a consumer transaction); *Daniels v. True* (1988), 47 Ohio Misc.2d 8, 547 N.E.2d 425 (contract to build garage is a consumer transaction).

contract with the city. We, however, refuse to view the contracts in this fashion. Instead, we treat the Williamses' contract as it should be treated, as a separate contract in its own right. Therefore, the fact that Edwards happened to be performing on a commercial contract at the same time that he was performing on the Williamses' residential contract did not, somehow, remove the Williamses' contract from the consumer realm.

■ Further, the fact that no money changed hands has no bearing on the applicability of the CSPA in this case. R.C. 1345.01(A)'s definition of consumer transaction itself includes not only "sales" of goods or services, but also "other transfers." Thus, we believe that the nature of the consideration involved in a particular transaction is immaterial to a determination of whether the transaction is a consumer transaction within the meaning of the CSPA. The Cuyahoga County Court of Appeals apparently reached the same conclusion in *Gayer v. Ohio Business Trading Assn.*,[7] because it found a violation of the CSPA where the defendant trade association arranged for the performance of insulation and siding work on the plaintiffs' home in exchange for trade units earned by the plaintiffs through their trade association membership.

Thus, the CSPA is fully applicable to the instant matter, as the Williamses, consumers under the Act, engaged in a consumer transaction with Edwards, a supplier under the Act. Accordingly, we conclude that the trial court's dismissal of the CSPA claim was erroneous as a matter of law, and we sustain the first assignment of error.

In their second and third assignments of error, the Williamses essentially ask this court to hold that Edwards engaged in unfair, deceptive, and unconscionable acts and practices in violation of R.C. 1345.02 and 1345.03. Based on the state on this record, we believe that these are determinations that must be made by the trial court on remand, after the Williamses have been given the opportunity to have their CSPA claim fully heard. Therefore, we overrule the. Williamses' second and third assignments of error. Furthermore, we do not address the fourth assignment of error because our resolution of the first three assignments of error renders it moot.

In their fifth assignment of error, the Williamses assert that the trial court's dismissal of their fraud claim under Civ.R. 41(B)(2) was against the manifest weight of the evidence. This assignment is without merit.

Midway through the Williamses' case-in-chief, the trial court indicated that it questioned whether the Williamses had presented any evidence to support their

---

7. *Gayer v. Ohio Business Trading Assn.* (July 7, 1988), Cuyahoga App. No. 54892, unreported, 1988 WL 87629.

fraud claim. Specifically, the trial court indicated that it had heard no evidence to suggest that at the time Edwards represented to the Williams that he would perform the services listed in the contract, he, in fact, intended not to perform the services as promised. Given the absence of evidence on this point, the trial court determined that the case would not go forward on the basis of fraud. Then, at the conclusion of the Williamses' case-in-chief, Edwards moved to dismiss the fraud claim under Civ.R. 41(B)(2); the trial court granted the motion.

■ To successfully maintain a claim for fraud, a plaintiff must prove the following elements:

"(a) a representation or, where there is a duty to disclose, a concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."[8]

■ Furthermore, fraud is generally predicated on a misrepresentation relating to a past or existing fact, and not on promises or representations relating to future actions or conduct.[9] An exception to this rule exists, however, where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise.[10] In such a case, the individual possesses actual fraudulent intent and a claim for fraud may be asserted against him.

■ The Williamses assert that when Edwards promised that he would perform specific improvements to their property in the future, he did not, in fact, intend to carry out the improvements in the manner that he had promised. Thus, they assert, he possessed actual fraudulent intent. However, because the Williamses had no direct evidence of fraudulent intent, if they were to successfully maintain their fraud claim, they had to convince the trial court that fraudulent

---

8. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus.

9. *Glass v. O'Toole* (1930), 36 Ohio App. 450, 173 N.E. 214; *Citizens Banking & Sav. Co. v. Spitzer, Rorick & Co.* (1938), 65 Ohio App. 309, 18 O.O. 479, 29 N.E.2d 892; *Tibbs v. Natl. Homes Constr. Corp.* (1977), 52 Ohio App.2d 281, 6 O.O.3d 300, 369 N.E.2d 1218.

10. *Tibbs*, 52 Ohio App.2d at 287, 6 O.O.3d at 303, 369 N.E.2d at 1223.

intent could be inferred from the surrounding circumstances. But, after weighing the evidence presented by the Williamses, the trial court was not convinced of Edwards's fraudulent intent. Because there is competent, credible evidence in the record to support this determination, we are unable to conclude that it was against the weight of the evidence. Therefore, we overrule the fifth assignment of error.

In their sixth assignment of error, the Williams assert that the trial court's award of $11,966.75 in damages was inadequate. They contend that because they presented evidence of $19,958.21 in damages, the trial court's award of damages in a lesser amount was against the manifest weight of the evidence. This assignment is not well taken.

The assessment of damages was a matter within the province of the trier of fact, which was free to accept or reject any or all of the evidence as to damages.[11] Moreover, because the Williamses did not request findings of fact and conclusions of law, we must presume that the trial court correctly applied the law and must affirm its judgment if there was some competent, credible evidence to support it.[12] Because we conclude that the trial court's award of damages was supported by competent, credible evidence, we overrule this assignment of error.

In their seventh and final assignment of error, the Williamses assert that the trial court erred in refusing to apply R.C. 1343.03(A) in calculating their award of prejudgment interest. Although we do not agree that the trial court erred in failing to apply R.C. 1343.03(A), we conclude that in calculating prejudgment interest under R.C. 1343.03(C), the trial court did commit error.

Seven days after the entry of final judgment, the Williamses filed a motion for prejudgment interest under R.C. 1343.03(A). Thereafter, they filed a supplemental motion seeking, in the alternative, prejudgment interest under R.C. 1343.03(C). Ultimately, the trial court found that Edwards had failed to make a good-faith effort to settle the case and awarded the Williamses $742.10 in interest under R.C. 1343.03(C). The trial court reached this figure after calculating interest at a rate of 4.5 percent per annum from the time that the complaint was filed until the date of final judgment. The trial court, however, found R.C. 1343.03(A) to be inapplicable.

R.C. 1343.03(A) states:

---

11. *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 648 N.E.2d 565.

12. *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.* (1989), 62 Ohio App.3d 657, 577 N.E.2d 383; *Pettet v. Pettet* (1988), 55 Ohio App.3d 128, 562 N.E.2d 929; *Hollingsworth v. Levy* (Jan. 17, 1996), Hamilton App. No C–950319, unreported, 1996 WL 13849.

"[W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between the parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at a rate of ten percent per annum * * *."

As the Ohio Supreme Court stated in *Royal Elec. Constr. Corp. v. Ohio State Univ.*,[13] the only question to be answered by a trial court in determining whether to award prejudgment interest under R.C. 1343.03(A) is: Has the aggrieved party been fully compensated? In the typical breach-of-contract case, the aggrieved party cannot be made whole unless it is compensated for the lapse of time between accrual of the claim and final judgment. Accordingly, in those cases, it is usually necessary that the trial court award prejudgment interest for that period of time. The case *sub judice* is unique, however, in that the Williamses made no initial outlay of money or labor in relation to their contract with Edwards. Under these special facts, we believe that the Williamses were fully compensated by the $11,966.75 judgment rendered in their favor. For this reason, they were not entitled to prejudgment interest under R.C. 1343.03(A).

Although we conclude that the Williamses were not entitled to prejudgment interest on their contract damages under R.C. 1343.03(A), because the trial court found that Edwards failed to make a good-faith effort to settle, the Williamses were entitled to prejudgment interest under R.C. 1343.03(C) on their tort damages. However, our review of the trial court's award of prejudgment interest under R.C. 1343.03(C) reveals that the $742.10 awarded by the trial court was erroneous as a matter of law. In calculating this award, the trial court apparently applied the current version of R.C. 1343.03(C), which was not effective until January 27, 1997. At the time this suit was commenced, however, the controlling statute was former R.C. 1343.03(C), which provided:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, *shall be computed from the date the cause of action accrued to the date on which the money is paid*, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (Emphasis added.) 139 Ohio Laws, Part I, 2035.

---

13. (1995), 73 Ohio St.3d 110, 652 N.E.2d 687.

Further, the statutory rate of interest then in effect was ten percent per annum. Thus, in awarding the Williamses interest under R.C. 1343.03(C), the trial court should have computed the interest at a rate of ten percent per annum from the date the cause of action accrued until the date on which the money was paid, instead of from the time that the complaint was filed until final judgment. Accordingly, we conclude that the Williamses are entitled to appropriately calculated prejudgment interest under R.C. 1343.03(C) on their tort damages. However, given that the trial court failed to specify what amount of its judgment represented contract damages and what amount represented tort damages, we must remand this matter for a determination of that issue. Upon making that determination, the trial court shall then award the Williamses prejudgment interest on their tort damages in accordance with this decision.

## CONCLUSION

We reverse that part of the trial court's judgment dismissing the Williamses' CSPA claim and remand this case for further proceedings on that claim. Because the trial court has already conclusively determined that the Williamses suffered $11,966.75 in actual damages, the proceedings on remand shall be limited to a determination of the following issues: (1) whether the CSPA was violated; and (2) if so, whether the Williamses are entitled to (a) have their already determined actual damages trebled pursuant to R.C. 1345.09(B), and (b) have attorney fees awarded pursuant to R.C. 1345.09(F).

In addition, we reverse the award of prejudgment interest and remand the case for a recalculation of interest under R.C. 1343.03(C), following a determination of what amount of the judgment constitutes contract damages and what amount constitutes tort damages.

The remainder of the trial court's judgment is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SUNDERMANN, P.J., DOAN and MARIANNA BROWN BETTMAN, JJ., concur.