DECISION.
Plaintiff-appellant, G. Robert Hines, the administrator of the estate of Mary C. Kelsch, filed suit against defendant-appellee, Thomas Kelsch, Mary Kelsch's son. He sought to recover a $70,000 unpaid loan that the decedent had made to Thomas Kelsch, plus interest. After a bench trial, the trial court granted judgment in favor of Hines for the amount of the loan, plus interest from the date of the estate's amended inventory. Hines has filed an appeal from that judgment, contesting the amount of interest awarded. We affirm the trial court's judgment.
The evidence at trial showed that Thomas Kelsch took over the operation of the family funeral-home business after his father's death in 1982. He frequently obtained loans from his mother due to the sporadic nature of the business. Mary Kelsch would advance the funds to her son, and he would later pay her back. Thomas Kelsch testified that these arrangements were always informal, that his mother was a very kind person, and that she did not demand repayment of the loans at any particular time.
Mary Kelsch was an ardent note-taker. She kept the savings-account passbooks and her checking stubs near at hand at all times and made contemporaneous notes about her financial transactions. Her notes in her account books showed that in the early 1980s she had made loans to Thomas Kelsch at six-percent interest. For example, a notation dated November 5, 1981 stated, "4000.00 Tom Loan @6%." Her note also showed extra payments of $500 on loan repayments from Thomas Kelsch. He testified that all of the loan transactions had been informal, that he and his mother had never discussed payment of any interest, and that the extra payments had been a gift to his mother for lending him the money.
In December 1985, Mary and Thomas Kelsch entered into a more formal transaction in which Mary agreed to sell to Thomas the stock she owned in the family funeral home business and the real estate on which it was operated. The parties executed a note and mortgage to be paid off over a ten-year period at an interest rate of 9.5 percent. Thomas Kelsch paid her in monthly installments on a normal ten-year amortization schedule. In 1992, when interest rates dropped, Thomas Kelsch secured a loan at a bank and delivered a check to his mother for $89,104.03. He obtained a receipt from her in full satisfaction of that loan, even though the payment did not include ten months of accrued interest. He testified that although he did not remember specifically, she probably told him to keep the accrued interest.
Subsequently, Mary Kelsch loaned Thomas Kelsch $70,000, the amount that was the subject of the litigation. She issued a check dated August 2, 1993, with the word "Loan" written on the memorandum line, which Thomas Kelsch cashed the same day. Her checkbook stub contained the notations "Tom at _____%" and "Loan to Tom at ____%" above and below the date. Finally, Thomas Kelsch signed a handwritten memorandum stating, "I owe Mary C. Kelsch $70,000 loan on 8/2/93." Though Thomas Kelsch visited his mother regularly, she never asked him to repay any of the funds he had borrowed, and he did not pay any interest or principal on the loan prior to his mother's death.
Mary Kelsch died on November 22, 1995. Subsequently, Thomas Kelsch filed an application for authority to administer the estate, in which he asked the probate court to appoint him administrator of the estate. He also certified that, to his knowledge, the decedent did not have a will and he did not owe the estate any money. He testified that his attorney had filled out the form, and that he had simply signed it without being aware of its contents. He stated that he believed his mother had a will, and that it directed that all of her children's debts to her be forgiven. Additionally, he testified that she had told him to "forget it" several times, and that he believed he did not owe her any money.
Subsequently, a will was admitted to probate, and a will-contest action was filed. The court eventually appointed Hines to administer Mary Kelsch's estate. On January 22, 1997, he filed an inventory reflecting that no known estate assets existed. However, during the pending will-contest litigation, he discovered the $70,000 loan from Mary Kelsch to Thomas Kelsch. Consequently, on February 12, 1998, he filed an amended inventory in which he listed the $70,000 indebtedness as an estate asset. During negotiations, Thomas Kelsch agreed to pay the $70,000 loan principal to the estate, but he refused to pay interest, thus prompting the suit filed by Hines.
The trial court held that although Mary Kelsch had charged interest on previous loans to Thomas Kelsch, "it was not proved by a preponderance of the evidence that she intended to charge interest on this $70,000 loan[.]" The court further held that the loan had become due and payable upon the filing of the amended inventory on February 12, 1998, and that Hines was entitled to judgment in the amount of $70,000 plus ten-percent interest from that date.
Hines presents two assignments of error for review. In his first assignment of error, he states that the trial court erred in finding that a preponderance of the evidence did not show that Mary Kelsch had intended to charge interest on the $70,000 loan. He argues that the evidence showed that all other loans between the two parties carried interest, and that Mary Kelsch's contemporaneous memorandum at the time of the loan showed that she had intended to charge interest, but that she had neglected to fill in the applicable rate. This assignment of error is not well taken.
Hines relies upon the three documents reflecting the loan transaction: (1) the check from Mary Kelsch to Thomas Kelsch for $70,000 with the word "Loan" written on the memorandum line; (2) Mary Kelsch's checkbook stub with the notation "[f]or loan to Tom at _____%"; and (3) Thomas Kelsch's handwritten memorandum stating, "I owe Mary C. Kelsch $70.000." He contends that these documents, while not creating a negotiable instrument, created a document "like a demand note," and that various provisions of the Ohio Revised Code applicable to demand notes should have applied. We disagree. These documents did not meet the requirements for a demand instrument or a promissory note. See R.C. 1303.03(A) and 1303.03(E).
These documents were merely evidence of the oral contract between Mary and Thomas Kelsch. The Ohio Supreme Court has held that a written memorandum that merely evidences an oral contract does not convert the oral contract into a contract in writing. First Natl. Sec. Corp. v. Hott
(1954), 162 Ohio St. 258, 262, 122 N.E.2d 777, 779; Joseph W. Diemert,Jr. Associates Co, L.P.A. v. Rubenstein, Novak, Einbund Pavlik (July 27, 2000), Cuyahoga App. No. 76575, unreported; Thomas H. Jacoby Associates, Inc. v. Jednak Floral Co. (Nov. 7, 1991), Franklin App. No. 90AP-1228, unreported. Consequently, in this case, the court was merely determining the terms of an oral contract, and the statutes Hines has cited did not apply.
The same rules of construction and interpretation apply to written and oral contracts. Ram Const. Co., Inc. v. Am. States Ins. Co. (C.A.3, 1984), 749 F.2d 1049, 1053; United Realty Invest. Co. v. Laria (Aug. 5, 1981), Stark App. No. CA-5588, unreported. The words and conduct of the parties disclose the intent to contract and the terms of an oral agreement. Rutledge v. Hoffman (1947), 81 Ohio App. 85, 86-87,75 N.E.2d 608, 609-610; Complete Auto Auction v. Automotive Fin. Corp. (June 10, 1998), Summit App. No. 18450, unreported. See, also, McSweeneyv. Jackson (1996), 117 Ohio App.3d 623, 631-632, 691 N.E.2d 303,308-309. The existence and the terms of an oral contract are issues for the trier of fact, and an appellate court, when reviewing these issues, should give special deference to the fact finder's ability to make credibility assessments. Ram Constr., supra, at 1053; Arnold Palmer GolfCo. v. Fuqua Indus., Inc. (C.A.6, 1976), 541 F.2d 584, 588; A.W. KowitInvest. Co., Inc. v. Atwell (Oct. 28, 1993), Cuyahoga App. No. 62778, unreported; Arion Corp. v. Levine (June 16, 1983), Cuyahoga App. No. 45237, unreported.
The evidence in this case showed that Mary Kelsch had reviewed her banking documents frequently and that she had made meticulous notes when she had done so. The check stub for the $70,000 check to Thomas Kelsch left the interest rate blank in two places, even though on previous loans she had written in the interest rate. Further, she did not fill in these blanks from August 2, 1993, the date of the loan, until her death on November 22, 1995. Finally, Thomas Kelsch testified that the loan was to be without interest. Hines contends that Kelsch's testimony was not credible, but, in any trial, civil or criminal, matters as to the credibility of the evidence are for the trier of fact to decide. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; Delaney v. Skyline Lodge, Inc. (1995), 95 Ohio App.3d 264,276, 642 N.E.2d 395, 403.
Because the trial court's finding that Mary Kelsch did not intend to charge interest on the $70,000 loan was supported by competent, credible evidence, this court will not reverse it as being against the manifest weight of the evidence. See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Consequently, we overrule Hines's first assignment of error.
In his second assignment of error, Hines states that the trial court's determination that the loan became due and payable upon the filing of the amended inventory on February 12, 1998, was against the manifest weight of the evidence. Hines asserts that Thomas Kelsch's failure to disclose the existence of the loan prevented him from discovering it until two years after Mary Kelsch's death in an unrelated litigation. He argues that, had he known about the loan, he would have demanded its repayment much earlier and interest would have run much earlier. This assignment of error is not well taken.
R.C. 1343.03(A) provides,
 [W]hen money becomes due and payable upon any bond, bill, note or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
Prejudgment interest under this statute "does not punish the party responsible for the underlying damages * * *, but rather it acts as compensation and serves ultimately to make the aggrieved party whole."Royal Elec. Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110,117, 652 N.E.2d 687, 692. In determining whether to award prejudgment interest, a court must only ask one question: has the aggrieved party been fully compensated? See id. at 116, 652 N.E.2d at 692; Williams v.Edwards (1998), 129 Ohio App.3d 116, 126, 717 N.E.2d 368, 375. A reviewing court will not reverse a trial court's decision on whether to award prejudgment interest absent an abuse of discretion. Westbrock v.Western Ohio Health Care Corp. (2000), 137 Ohio App.3d 304, 324,738 N.E.2d 799, 813; Star Bank Natl. Assn. v. Cirrocumulus Ltd.Partnership (1997), 121 Ohio App.3d 731, 748, 700 N.E.2d 918, 929. Consequently, we review this assignment of error using an abuse-of-discretion standard rather than the weight-of-the-evidence standard argued by Hines.
Under the statute, the parties could have signed a written contract providing for an alternate rate of interest of zero percent, and our inquiry would have been at an end. Yager Materials, Inc. v. MariettaIndus. Ent., Inc. (1996), 116 Ohio App.3d 233, 235-236, 687 N.E.2d 505,506-507; Markan v. Sawchyn (Dec. 22, 1983), Cuyahoga App. No. 46885, unreported. But, because this case involved an oral contract, the issue presented to the trial court was when the $70,000 loan became "due and payable." Because the statute does not specify when money becomes due and payable, the trial court must make that determination. Akron v. Kalavity
(Dec. 30, 1998), Summit App. No. 19010, unreported. See, also, Bravermanv. Sprigg (1980), 68 Ohio App.2d 58, 60, 426 N.E.2d 526, 527, abrogated on other grounds in Royal Elec., supra. Generally, contractual interest accrues from the time the money should have been paid. Star Bank, supra,
at 749, 700 N.E.2d at 929; Braverman, supra, at 60, 426 N.E.2d at 527. In the typical breach-of-contract case, the aggrieved party cannot be made whole unless that party is compensated for the lapse of time between the accrual of the claim and the entry of final judgment. See Williams,supra, at 126, 717 N.E.2d at 375.
This was not, however, the typical contract case. It was a loan between family members. Mary Kelsch never requested the repayment of the loan, and the trial court held that Hines had failed to prove that she had intended to charge interest during her lifetime. Hines, as the administrator of Mary Kelsch's estate, represented her in settling her affairs and stood in her shoes. Dawson v. Ohio Dept. of Human Serv. (1990), 68 Ohio App.3d 262, 263, 588 N.E.2d 217, 218; Braun v. CentralTrust Co. (1952), 92 Ohio App. 110, 115, 109 N.E.2d 476, 480; In reEstate of Gabriel (Dec. 19, 1997), Lake App. No. 95-L-178, unreported. If the decedent never sought repayment of the loan or the payment of interest, then the administrator of her estate was not aggrieved by the lapse of time in the repayment of the loan or the lack of interest. Consequently, interest from the time of the loan or the time of Mary Kelsch's death was not necessary to make the aggrieved party whole. SeeWilliams, supra, at 126, 717 N.E.2d at 375.
Therefore, the trial court's decision to make interest payable from the date of what it considered to be the first actual demand for the money was not prejudicial to Hines and was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140, 1142. In fact, it is our view that the trial court would have been within its discretion to make interest payable from the date of the final judgment in this case, in other words, to order only post-judgment interest. See, generally, State ex rel. Shimola v. Cleveland (1994), 70 Ohio St.3d 110,112, 637 N.E.2d 325, 326-327; Goddard v. Children's Hosp. Med. Ctr. (Nov. 3, 2000), Hamilton App. No. C-990408, unreported. However, Thomas Kelsch has not filed a cross-appeal on that issue, and he has, therefore, waived it. App.R. 3(C)(1); Howard v. Columbus Prod. Co. (1992), 82 Ohio App.3d 129, 132, 611 N.E.2d 480, 482.
Hines argues that upon Mary Kelsch's death, any possibility that she would have forgiven the debt vanished. Thus, he contends, the debt became liquidated and capable of ascertainment as of her date of death. Hines's argument misapprehends the state of the law. In Royal Elec., supra, the Ohio Supreme Court specifically rejected the proposition that the issue of whether a debt is liquidated, unliquidated or capable of ascertainment is determinative of the issue of prejudgment interest. Royal Elec.,supra, at 116, 652 N.E.2d at 692; Shell Oil Co. v. Huttenbauer Land Co.,Inc. (1997), 118 Ohio App.3d 714, 722-723, 693 N.E.2d 1168, 1174-1175;Yuhanick v. Cooper (Mar. 14, 2001), Columbiana App. No. 99 CO 37, unreported.
Accordingly, we hold that the trial court did not abuse its discretion in ordering interest on the $70,000 from February 12, 1998, the date of the amended inventory. We overrule Hines's second assignment of error and affirm the trial court's judgment.
Doan, P.J., Hildebrandt and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.