OPINION
{¶ 1} John Kreusch and LaDonna Wasson ("plaintiffs") appeal from a summary judgment in favor of Irwin Mortgage Corporation. The summary judgment dismissed plaintiffs' fraud claim against Irwin.
 {¶ 2} By way of background, the plaintiffs entered into a consent judgment and decree of foreclosure in 2001 with Irwin in case no. 00-315.
 {¶ 3} In 2004, plaintiffs sued Irwin for fraudulent inducement, claiming that they had entered into the consent judgment and decree of foreclosure upon representations by Irwin, through its counsel, that the resolution in case no. 00-315 would "result in no adverse effect on plaintiffs' future credit." Plaintiffs claimed that Irwin's representations were known by Irwin to be false and fraudulent, and that they had been denied FHA financing as a result of Irwin's representations.
 {¶ 4} Irwin moved for summary judgment, supported by the affidavit of its attorney, Brian Jackson. His affidavit states in part:
 {¶ 5} "2. I represented Irwin Mortgage in the Miami County action, Case No. 00-315, John F. Kreusch, et al. v. Judy R.Smith, et al. [`the previous action'], and negotiated the settlement with plaintiffs, from which plaintiffs now allege that they were fraudulently induced to enter.
 {¶ 6} "4. Attached hereto as Exhibit `B' is a true and accurate copy of a letter that was faxed to plaintiffs' counsel. This letter is also the copy that was faxed from plaintiff's counsel to the affiant providing signature approval of the proposed Consent Judgment and Decree in Foreclosure; and Voluntary Dismissal of Plaintiff's Claims Against defendant, Irwin Mortgage Corporation, With prejudice."
 {¶ 7} Exhibit B stated in part:
 {¶ 8} "Further, if you agree to the terms of the Consent Judgment Entry and the date the property must be vacated, my client will reverse all reports made to the credit agencies after the property sells. According to my client, the credit reports will appear as though this mortgage never existed. If anyone reading the credit report inquires, however, it may be necessary for your clients to explain why this mortgage no longer appears on their credit reports."
 {¶ 9} The Jackson affidavit continued:
 {¶ 10} "8. On or about May 23, 2001, attorney R. Mark Henry, attorney for plaintiffs, contacted affiant to inquire whether settlement was still possible.
 {¶ 11} "9. On June 4, 2001, affiant sent plaintiff's counsel a settlement offer which plaintiffs accepted. A true and accurate copy of the June 4th letter that was returned to affiant with plaintiff's acceptance is attached hereto as Exhibit `B'.
 {¶ 12} "10. A copy of the proposed Consent Judgment and Decree in Foreclosure; and Voluntary Dismissal of Plaintiffs' Claims Against Defendant, Irwin Mortgage Corporation was included with the June 4, 2001 letter sent to plaintiff's counsel.
 {¶ 13} "11. At no time did Irwin Mortgage, or affiant, represent that the Consent Judgment and Decree in Foreclosure would result in no adverse effect on Plaintiff's future credit.
 {¶ 14} "12. At no time did Irwin Mortgage, or affiant, make any representations with respect to the borrowers' ability to obtain future credit."
 {¶ 15} The plaintiffs countered with an affidavit from Mark Henry which stated in part:
 {¶ 16} "2. Plaintiffs John F. Kreusch and LaDonna G. Wasson, also Plaintiffs in the instant case, before this Court in Case No. 00-315, Kreusch, et al. v. Smith, et al., and I negotiated with Defendant for approval of a Consent Judgment and Decree in Foreclosure, which included a dismissal of my clients' claims in that case against Defendant Irwin Mortgage Corporation.
 {¶ 17} "3. The negotiation of this settlement and dismissal included my telephone conversations with Brian Jackson, attorney for Irwin Mortgage Corporation. In the course of our discussions, I communicated to Mr. Jackson that my clients' chief, overriding concern about dismissing their claim and allowing the foreclosure to go forward was their concern that it would ruin their credit, i.e., that it would adversely affect their ability to obtain credit afterwards. Mr. Jackson responded to this issue by explaining that he might be able to obtain his client's cooperation in reversing all reports made to the credit reporting agencies concerning the mortgage. He further stated that the effect of this action would make the credit reports appear as though the mortgage never existed.
 {¶ 18} "4. In the settlement, the Defendant agreed to reverse all reports made to the credit agencies in return for my clients' agreement to the terms of the Consent Judgment and Decree in Foreclosure referenced above.
 {¶ 19} "5. My clients agreed to the terms of the Consent Judgment and Decree in Foreclosure, which was filed with this Court on June 12, 2001. The only further comment on the potential effects of reversing the credit reports was Mr. Jackson's statement in a letter dated June 4, 2001 (attached to Mr. Jackson's affidavit as Exhibit B), that it `may be necessary to explain why this mortgage no longer appears on their credit reports.'
 {¶ 20} "6. In light of the context of our discussions of settlement, both Defendant and Mr. Jackson, Defendant's attorney, did represent to Affiant that the Consent Judgment and Decree in Foreclosure would result in no adverse effect on Plaintiffs' credit or ability to obtain future credit."
 {¶ 21} After consideration of the affidavits, the trial court determined that there were no genuine issues of material fact and that Irwin was entitled to judgment as a matter of law.
 {¶ 22} On appeal, the plaintiffs advance two assignments of error that we will discuss together.
 {¶ 23} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT WHEN THERE IS A GENUINE ISSUE OF MATERIAL FACT."
 {¶ 24} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE FACTS ALLEGED BY APPELLANTS DO NOT SUPPORT A FRAUDULENT INDUCEMENT CLAIM."
 {¶ 25} In concluding there were no issues of material fact, the trial court determined that Henry's affidavit "[did] not contradict the affidavit of Irwin's attorney, that Irwin's attorney made no direct representations as to the present or future credit status of the Plaintiffs resulting from the terms of the settlement." The court observed — correctly — that Irwin had fulfilled its undertakings under the settlement agreement and concluded that Henry's affidavit alleged no more than his interpretation of Irwin's actions. This conclusion was based on the opening phrase of paragraph 6 of Henry's affidavit: "In light of the context of our discussions of settlement . . ."
 {¶ 26} Given the duty of the trial court to consider the evidence most strongly in the non-movant's favor, we are constrained to agree with the plaintiffs that the court did not give sufficient weight to paragraph 6 of Henry's affidavit. In our judgment, the opening phrase of that paragraph did not nullify what followed: an affirmative statement that Irwin and its attorney "did represent to (Henry) that the Consent Judgment and Decree in Foreclosure would result in no adverse effect on Plaintiffs' credit or ability to obtain future credit."
 {¶ 27} In sum, we believe Henry's affidavit created an issue of fact as to whether Irwin or its counsel represented that the consent judgment and decree of foreclosure would not adversely effect plaintiffs' credit status.
 {¶ 28} Having so concluded, the question remains as to whether this issue of fact is an issue of material fact. The trial court observed that "representations concerning future acts do not ordinarily constitute a basis to support fraud. The exceptions do not apply here." The case law alluded to by the court is succinctly summarized in Yo-Can, Inc. v. The YogurtExchange, Inc., (2002) 149 Ohio App.3d 513, 525:
 {¶ 29} "Generally, fraud is not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring.Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 742,607 N.E.2d 1140. However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future. Id. See, also,Williams v. Edwards (1998), 129 Ohio App.3d 116, 124,717 N.E.2d 368; Tibbs v. Natl. Homes Constr. Corp. (1977),52 Ohio App.2d 281, 287, 6 O.O.3d 300, 369 N.E.2d 1218."
 {¶ 30} There can be no doubt that any misrepresentation made by Irwin regarding plaintiffs' credit status involved their ability to obtain financing in the future, and there is nothing in Henry's affidavit to implicate the exception to the general rule. It follows, therefore, that there was no issue of material fact raised by Henry's affidavit. Because Irwin's misrepresentation, if any, concerned a future event, it was entitled to judgment as a matter of law.
 {¶ 31} The assignments of error are overruled.
 {¶ 32} The judgment will be affirmed.
Grady, P.J., and Donovan, J., concur.