[Cite as *J.I.L. One, L.L.C. v. Kemper*, 2014-Ohio-4932.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| J.I.L. ONE LLC, d.b.a.  J.I.L. INVESTMENTS, | : | APPEAL NO. C-130555 |
| | | TRIAL NO.  11CV-09359 |
| | : | |
| Plaintiff-Appellant, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| LAWRENCE KEMPER, | | |
| | : | |
| and | | |
| | : | |
| YOLANDA ST. CLAIR, | | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Municipal Court

Judgment Appealed from is:  Affirmed as Modified

Date of Judgment Entry on Appeal:  November 7, 2014

*Immerman & Tobin Co, L.P.A.,* and *Thomas M. Glennon*,  for Plaintiff-Appellant,

*Legal Aid Society of Southwest Ohio, LLC*, and *Noel M. Morgan*, for Defendants-Appellees.


Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Plaintiff-appellant J.I.L. One LLC, d.b.a. J.I.L. Investments ("JIL"), appeals from the judgment of the Hamilton County Municipal Court in favor of defendants-appellees Lawrence Kemper and Yolanda St. Clair on JIL's claims related to the breach of an installment land contract and on the appellees' counterclaim for breach of that contract.  The trial court awarded the appellees, who were the vendees, damages of $10,000.  In the five assignments of error before us for review, we are asked to determine the propriety of this award, in light of appellees' successful assertion of the defense of impossibility of performance.  For the reasons that follow, we modify the judgment for the appellees and affirm the judgment as modified.

### I. Background Facts and Procedural History

{¶2}   In 2009, Matthew Vilas, the owner of JIL, a company that owned, rented, and sold real estate, solicited St. Clair, one of his tenants who he knew was the recipient of subsidized housing, to purchase a property that the company was renovating for a quick sale.  To that end, Vilas gave St. Clair a letter that he had drafted and had given to other tenants, promoting the use of the federal government's First-Time Homebuyer Credit Program.  This program, administered by the Internal Revenue Service ("IRS"), involved a limited-time tax credit ("stimulus funds") intended to stimulate the economy.  The taxpayer seeking the stimulus funds had to comply with specific regulations, such as entering into a purchase agreement by a certain date and closing on the sale by a certain date, to qualify for the stimulus funds, for which the taxpayer would apply after the "sale and purchase" by submitting an amended tax return.

{¶3}    In relevant part, the three-page promotional letter that Vilas sent to St. Clair provided as follows:

I am happy to offer you a limited once in a lifetime opportunity for home ownership, that will never be offered again in our lifetime.  I am offering you home ownership on a land contract and by doing so we are creating a gift to both of us from our government of 10% of the purchase price, or a maximum of $8000 on any purchase in excess of $8000.  Where we as present owners would benefit is that we would receive as the down payment the government gift created by the purchase of your present home. * * * You would have to make all the payments for 3 years in order for the gift to be FREE.   * * * We would like to be cashed out fully in 3 years if possible, even if you have to take a friend or relative in to purchase the home for you down the road in 3 years * * *.

* * *

Our being full time 3rd generation Relators [we] want to bless everyone with the American dream of home ownership.  This window of opportunity is closing by May 1st, 2009 and will in my opinion never be offered again.  NO ONE BUT A FOOL WOULD TURN DOWN THIS FREE GIFT OF MONEY FROM OUR GOVERNMENT.   The BEAUTY of this opportunity from your view point is that they will give the money on an agreement for deed or land contract and that is the only way we could sell you your home.

{¶4}    St. Clair and Kemper, her boyfriend, expressed an interest in buying a property together from Vilas, but not the property that St. Clair had been renting.

3

The program for first-time homebuyers was subsequently extended to include purchases before May 1, 2010. In the spring of 2010, JIL purchased a single-family, three-bedroom, two-bath house at 1613 DeArmand Avenue in the North College Hill area of Cincinnati for $22,900. According to Vilas, he spent $40,000 to improve it before offering it to the appellees. At the time, Kemper was employed at a flooring company, he had never owned a home, and he had income such that he could take advantage of the First-Time Homebuyer Credit Program.

{¶5} On April 30, 2010, the appellees entered into an agreement with JIL to purchase the DeArmand Avenue property under a land installment contract for $70,000, with a down payment of $7000, which was to come from the stimulus funds, and an additional down payment of $700, to be paid in monthly installments of $100. The balance of the purchase price was to be paid in monthly installments of principal and interest amortized over 300 months at an interest rate of 8.5 percent, with a balloon payment due in 36 months.

{¶6} Importantly, the purchase agreement that Vilas drafted provided that if the "stimulus funds" of $7000 were not paid to seller within 60 days of the purchase agreement, which in this case was June 29, 2010, the purchase agreement would be "null & void."

{¶7} On June 30, 2010, the parties executed a Land Installment Contract ("the contract") that Vilas drafted. The contract was consistent with the terms agreed to in the purchase agreement, except that it provided that if the vendees, the appellees, failed "to receive and assign the said [stimulus funds from the IRS] of $7,000.oo within 60 days from the date of this contract, Vendor may terminate this Land Contract Agreement * * * ." The contract also provided that the vendees would pay one-twelfth of the yearly real estate tax and insurance premium each month as a

4

part of the total monthly installment payment, and that they would pay all utilities, including water charges. The appellees took occupancy of the premises, and Vilas recorded the contract in accordance with R.C. 5313.02(C).

{¶8} Kemper then applied for the stimulus funds by filing an amended tax return. The IRS rejected his application because the transaction failed to comply with the regulation that he "enter into a binding contract to buy the home before May 1, 2o10, and close before July 1, 2010," to obtain the stimulus funds. The purchase agreement that Vilas had drafted and the parties had signed had become void, and therefore nonbinding, on June 29, 2010, when JIL did not receive the "stimulus funds."

{¶9} Vilas had not thoroughly investigated the details of the First-Time Homebuyer Credit Program, which he described as "virgin territory," but he was surprised and angry when Kemper told him that the IRS had rejected his application. He testified that he had not understood the ramifications of the 60-day deadline that he had included in the purchase contract, and that two other purchasers had successfully recovered stimulus funds despite the same language in the purchase contracts. He sent Kemper a draft of a contentious letter that he intended for Kemper to send to the IRS. Eventually, as his patience wore thin, Vilas sent the appellees obnoxious and condescending letters, replete with threats to ruin their credit if they did not comply with the terms of the contract.

{¶10} Vilas notified the appellees in March 2011 that JIL considered the land contract terminated, but Vilas continued to accept their monthly installment payments on behalf of JIL until April 2011. At that time, JIL served them with a "Notice to Leave the Premises."

{¶11} When the appellees did not leave by the stated deadline, JIL filed a complaint with claims for forfeiture and restitution of the premises and for money damages related to the breach of the contract. The appellees answered and counterclaimed, and paid the monthly installment payment into a court escrow account. The appellees vacated the property in July 2011. According to the appellees, JIL had agreed to waive the July installment payment in exchange for their vacation of the premises at that time and an agreement to allow the clerk to release the escrowed funds.

{¶12} JIL subsequently dismissed its claim for forfeiture and restitution, and amended its complaint to add a claim for unjust enrichment. Ultimately, JIL demanded a judgment against the appellees for the unpaid stimulus funds; for installment payments from April, July, and August 2011, which were allegedly unpaid; for alleged damage to the property caused by the appellees; for the final bill for water service that St. Clair and Kemper had allegedly failed to pay; and for the fair market rental value of the premises during the time of occupation.

{¶13} In their amended answer, St. Clair and Kemper denied most of the allegations, and set forth several affirmative defenses, including the defenses of impossibility of performance and unconscionability. They also pleaded several counterclaims asserting, among other things, fraud or fraudulent inducement and the breach of the contract by declaring it terminated based on a term that was impossible to perform.

{¶14} After a bench trial, the court found for the appellees on JIL's claims and against JIL on the appellees' breach-of-contract counterclaim. The court awarded damages of $10,000, the jurisdictional limit of the court, and entered a judgment for the appellees in that amount. The court specifically found that the

contract was one-sided, that the parties had understood when they formed the contract that the appellees could not afford the $7000 down payment unless Kemper received the stimulus funds, and that Kemper had applied for the stimulus funds, but the IRS had denied his application because Vilas had drafted the purchase contract inappropriately. Likewise, the court found that the appellees had paid the $700 down payment and every monthly installment payment, except for July's payment, which JIL had waived. Finally, the court found that the appellees had paid fair market rental value for the premises and that the appellees had caused no deterioration or destruction of the property. The court did not make any specific finding with respect to the water bill for which JIL sought reimbursement.

{¶15} JIL raises five assignments of error that challenge this judgment for the appellees.

## II. Analysis

{¶16} We begin with JIL's first and second assignments of error, which are related. In its first assignment of error, JIL attacks as against the manifest weight of the evidence the trial court's resolution of its claim for the $7000 in stimulus funds as provided for in the contract. In its second assignment of error, JIL attacks the award of $10,000 to the appellees on their counterclaim that was based on the allegation that JIL had breached the contract by declaring it terminated because of the appellees' failure to perform a term that JIL, through Vilas, "had rendered impossible to perform." JIL argues that the appellees could not get breach-of-contract damages for a contract that they contended was impossible to perform. It also argues in the alternative that the appellees failed to prove any actual breach-of-contract damages.

### A. Impossibility of Performance

{¶17} These assignments are related because they both require for their resolution the application of the doctrine of impossibility of performance. This doctrine recognizes that a party's performance may be affected by a fact existing at the time the contract was made or by a supervening fact that renders performance impossible. *See* 1 Restatement of the Law 2d, Contracts, Section 266, Comment a (1981). The circumstances of this case are best characterized as an existing impossibility, because, unbeknownst to either party, Kemper was not eligible for the stimulus funds when the parties executed the land installment contract.

{¶18} The Restatement of Contracts provides that "[w]here, at the time a contact is made, a party's performance under it is *impracticable* without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or the circumstances indicate to the contrary." (Emphasis added.) *Id.* at 266(1). Ohio appears to adhere to the stricter standard of *impossibility* rather than the modern standard of impracticability adopted by the Restatement. *See Wittrock v. Paragon Paper Co.*, 1st Dist. Hamilton No. C-840883, 1985 Ohio App. LEXIS 9676 (Dec. 18, 1985); *Rollman v. A.P.W.O.,* 1st Dist. Hamilton No. C-890712, 1991 Ohio App. LEXIS 454 (Feb. 6, 1991). But under either standard, the appellees prevailed.

{¶19} The appellees established the defense of impossibility existing at the time of the contract. JIL does not and cannot contend under these facts that Kemper should have known at the time the contract was made that he would not receive the stimulus funds because of the way Vilas had drafted the purchase agreement. Vilas represented himself as an experienced real estate agent, and he knew that Kemper

would rely on him. Likewise, JIL does not and cannot dispute that from the very beginning of the transaction the parties operated under the assumptions that Kemper would qualify for the stimulus funds and that the appellees could not afford the house without the stimulus funds. And nothing in the contract indicates that the parties bargained for the appellees' performance under the contract despite the impossibility of obtaining the stimulus funds. Under these circumstances, the appellees' duty to pay the $7000 never arose. Thus, the trial court did not lose its way in resolving JIL's claim under the contract for the $7000 in favor of the appellees, because the appellees pled and proved the affirmative defense of impossibility of performance.

{¶20} That said, because the appellees prevailed on their affirmative defense to JIL's breach-of-contract claim for the stimulus funds, they could not recover under the contract on the theory that JIL's termination due to nonperformance was a breach of the contract. *See Mitchell v. Thompson*, 4th Dist. Gallia No. 06CA8, 2007-Ohio-5362, ¶ 23 ("When contractual impossibility occurs, the parties need not perform their respective contractual obligations and will not recover because of a breach.").

{¶21} In this case, the proper remedy for the trial court was to rescind the contract and provide restitution for any partial performance by either party before the discovery of the impossibility. *See* 1 Restatement of the Law 2d, Contracts, Section 266, Comment a (1981). The court applied this remedy in part, because it ensured that JIL had been compensated with a fair rental value for the premises during the period of Kemper's and St. Clair's occupation of the premises. But the court also entered judgment for the appellees on their breach-of-contract

9

counterclaim and awarded "damages," even though the appellees did not establish any breach-of-contract damages except for the loss of their $700 deposit.

{¶22} We agree with JIL that the trial court erred by awarding breach-of-contract damages to the appellees under these circumstances. However, like JIL, Kemper and St. Clair were entitled to credit for their partial performance. Because the court found that the total monthly installment payment was equivalent to the fair market rental value for the premises, and that they had paid a down payment of $700, they were entitled to recover the $700 down payment.

### B. Fraud

{¶23} To prevent reversal of the trial court's judgment, the appellees argue that the trial court entered a "general judgment" in their favor in the amount of $10,000, which should be viewed as including compensatory and punitive damages for Vilas's tortious conduct in fraudulently inducing them to enter into the contract.

{¶24} We reject the appellees' argument. First, the trial court did not enter a general judgment. The court made specific findings of fact and conclusions of law that accompanied the journal entry. The court rendered judgment for the appellees after finding in their favor on their "breach of contract" counterclaims. The case does not have any of the attributes of a general verdict.

{¶25} Second, the appellees failed to establish their cause of action for fraud or fraud in the inducement. Initially, we note that the trial court did not recognize their pleadings as setting forth such a counterclaim. Instead, the trial court apparently treated the appellees' allegations as part of the affirmative defenses of unconscionability and impossibility. Although the appellees' pleadings do not contain a counterclaim captioned as "fraud" or "fraudulent inducement," we agree with the appellees that they arguably pled and tried such a claim. As identified in the

10

appellees' brief, this claim was based on Vilas's representation, set forth in the letter that he gave to St. Clair when she was his tenant, of "free money from our government" with which his company would "bless [its] tenants with home ownership." The appellees had attached the letter containing these representations to their amended answer and counterclaims. JIL had notice of the counterclaim, as demonstrated by its comments in closing argument that the claim was not pled with particularity and, in the alternative, that it was not proved.

{¶26} Typically, "[a] claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. * * * In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon the misrepresentation." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998).

{¶27} And "fraud is generally predicated on a misrepresentation relating to a past or existing fact, and not on promises or representations relating to future actions or conduct." *Williams v. Edwards*, 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (1st Dist.1998). An exception to this rule occurs when "an individual makes a promise concerning a future action, occurrence, or conduct, and, at the time he makes it, has no intention of keeping the promise. In such a case, the individual possesses actual fraudulent intent and a claim for fraud may be asserted against him." *Id.*

{¶28} Fraudulent intent can be inferred in the proper case, where the facts of the surrounding circumstances allow it. *See id.* at 125. But this is not such a case. The evidence at trial undisputedly established that the First-Time Homebuyer Credit Program that Vilas promoted was legitimate and that Kemper would have been

11

entitled to the "free money" but for Vilas's improper drafting of the purchase contract. And there was no evidence to reasonably support an inference that Vilas knew Kemper would not qualify for the "free money," or that he had acted with such recklessness or utter disregard for the truthfulness of that matter, when he made the representation that induced the appellees.

{¶29} Absent from the record is any evidence that Vilas had drafted the purchase contract to intentionally disqualify Kemper from receiving the stimulus funds. To the contrary, Vilas testified that he thought he had complied with the regulations. And, the record demonstrates that after executing the contract on behalf of JIL, he gave the appellees possession of the premises and recorded the land contract. The record simply does not support a finding of fraudulent intent. *See Information Leasing Corp. v. Chambers*, 152 Ohio App.3d 715, 2003-Ohio-2670, 789 N.E.2d 1155, ¶ 89 (1st Dist.).

{¶30} As a result, we cannot uphold the trial court's judgment to the appellees to the extent that it exceeds the $700 down payment. Accordingly, we overrule the first assignment of error, but we sustain the second assignment of error in part and overrule it in part.

### C. Compensation for Other Items

{¶31} JIL's final three assignments of error challenge as against the manifest weight of the evidence the trial court's denial of compensation for items set forth in the complaint. The third assignment of error relates to the July installment payment that the trial court found JIL had waived, the fourth assignment of error relates to the bill that the appellees had incurred for water service during their occupation of the premises, and the fifth assignment of error relates to the cost of restoring the premises to the condition that it was when the appellees first took possession.

{¶32}   After reviewing the evidence at trial, we cannot say that the trial court lost its way in resolving the facts against JIL with respect to the claim for the July 2011 installment payment and for the alleged damages to the premises.  Here, as in the trial of other civil cases, the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact.  *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶33}   But we arrive at a different conclusion with respect to the water bill. The only evidence at trial demonstrated that the appellees had agreed to pay for the water service, but had failed to pay the bill and that JIL had paid it. The appellees' only defense to the claim was that they would have paid it if they had been allowed to stay.  Thus, we conclude that the trial court's failure to award JIL the amount of $654.42 for the water bill was not just against the manifest weight of the evidence, but also contrary to law, and that his amount must be offset against the award to the appellees.  Therefore, we sustain the fourth assignment of error, but we overrule the third and fifth assignments of error.

### III. Conclusion

{¶34}   Accordingly, we reduce the amount of the judgment for the appellees from $10,000 to $45.58, and we affirm the judgment as modified.

Judgment affirmed as modified.

HILDEBRANDT and FISCHER, JJ., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.