[Cite as *Re/Max Crossroads Properties v. Roberts*, 2013-Ohio-5575.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99537**

---

# RE/MAX CROSSROADS PROPERTIES

PLAINTIFF-APPELLEE

vs.

# THOMAS ROBERTS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Berea Municipal Court
Case No. 10 CVF 03395

**BEFORE:** Kilbane, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 19, 2013

**ATTORNEY FOR APPELLANT**

David M. Lynch
333 Babbitt Road
Suite 333
Euclid, Ohio 44123

**ATTORNEYS FOR APPELLEE**

Katheryn J. McFadden
Donald P. McFadden
Monica E. Russell
McFadden & Freeburg Co., L.P.A.
1370 Ontario Street
Suite 600
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Thomas Roberts d.b.a. Citadel Communications/Data Encompass Technologies, Inc. ("Roberts," "Encompass," or "Citadel Communications"), appeals from the judgment of the Berea Municipal Court that awarded plaintiff-appellee, Re/Max Crossroads Properties ("Re/Max"), $11,665 in connection with a telephone upgrade project. For the reasons set forth below, we affirm.

{¶2} Re/Max sought to upgrade its existing telephones in order to accommodate Voice over Internet Protocol ("VoIP") service. On August 31, 2010, Re/Max paid Roberts $10,665. Roberts began work on the telephone system, but by November 18, 2010, VoIP service was not operational, and Re/Max demanded the return of the $10,665 payment.

{¶3} On December 20, 2010, Re/Max filed suit against Roberts, alleging that Roberts had agreed to reprogram the existing telephones and to install VoIP technology. Roberts maintained that he did not promise to complete such an upgrade, but had agreed to simply review the existing telephone system to evaluate whether it could be used for VoIP service.

{¶4} On April 12, 2011, Re/Max propounded discovery to Roberts. By August 12, 2011, Roberts had not responded, and on August 12, 2011, Re/Max filed a motion to compel. The trial court granted this motion on August 18, 2011. At his deposition on August 31, 2011, Roberts agreed to provide various records to Re/Max, including records

pertaining to how the $10,665 payment was disbursed, time spent on the project, and the name and addresses of defense witnesses. Roberts ultimately did not provide this information, and on October 13, 2011, Re/Max filed a second motion to compel. On December 15, 2011, the magistrate granted the motion and ordered that the documents Roberts failed to provide could not be offered at trial, Roberts could not present testimony from unidentified witnesses, and monetary sanctions would be imposed.

{¶5} The matter proceeded to trial before a magistrate on November 14, 2012. At this time, Re/Max requested $1,000 as an additional sanction for the discovery violations. Thereafter, Mary Lou Steed ("Steed") of Re/Max testified that Roberts indicated that the existing Cisco phones could be used for the VoIP technology, and he agreed to "reflash" them and "get them working in the new voice system." Although Roberts informed Steed that the name of his company was Encompass, he requested that the $10,665 check for payment list Citadel as the payee. Steed also testified that an Encompass employee took the existing phones but Roberts failed to deliver any of the agreed-upon products or services and repeatedly refused to return Re/Max's payment. Steed admitted on cross-examination that the parties' written contract was never signed. The parties undertook performance under the terms of the agreement, however. Steed also admitted that an entity named Cavalier had obligations under a portion of the contract, and that the contract states "assumed use of existing IP phones, switches and routers to convert. Otherwise, these [phones] are in addition, See optional/additional IP phones from Encompass."

{¶6} Re/Max also directed the trial court to a portion of Roberts's deposition that had previously been filed with the court, in which he admitted that he is self-employed and operates under "Citadel Communications."

{¶7} Roberts did not present evidence but also directed the court to his deposition. Roberts maintained in deposition that completion of the VoIP service was contingent upon use of existing phones, that he undertook to have the existing phones "reflashed" but was unable to do so despite his best efforts, and that he was entitled to payment for his efforts.

{¶8} On November 16, 2012, the magistrate entered judgment for Re/Max and against Roberts in the amount of $11,665. Roberts filed objections, but on January 15, 2013, the trial court overruled the objections, approved and confirmed the magistrate's recommendation, and entered judgment in favor of Re/Max for $11,665.

{¶9} Roberts now appeals, assigning the following sole assignment of error for our review:

> The trial court ruled against the weight of the evidence that demonstrated:
> [1.] There was no contract for any repair, only to investigate what repairs were needed[; and 2.] There was no personal liability demonstrated.

{¶10} In *State v. Wilson*, 113 Ohio St.3d 382, 387, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court described the civil manifest-weight-of-the-evidence standard as follows:

> [T]he civil manifest-weight-of-the-evidence standard was explained in *C.E. Morris Co. v. Foley Const. Co.* [1978], 54 Ohio St.2d 279, 8 Ohio Op.3d 261, 376 N.E.2d 578, syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be

reversed by a reviewing court as being against the manifest weight of the evidence"). We have also recognized when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. * * * This presumption arises because the trial judge [or finder-of-fact] had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." * * * "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."

*Id.* at ¶ 24.

**{¶11}** A breach of contract is defined as the failure, without legal excuse, to perform any promise that forms a whole or part of the contract. *J&J Schlaegel, Inc. v. Bd. of Trustees*., 2d Dist. Champaign Nos. 2005-CA-31 and 2005-CA-34, 2006-Ohio-2913, ¶ 24. To establish the essential elements of a breach of contract claim, the plaintiff must demonstrate that: (1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach. *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

**{¶12}** In this matter, Re/Max's evidence demonstrated that Roberts agreed to reflash the phones and get them working in their new voice system. Although the parties contemplated use of existing telephones, Re/Max's evidence demonstrated that Roberts's implementation of the VoIP system was not made contingent upon the ability to have the phones successfully reflashed for the new system. Steed then gave Roberts a check for $10,665, which he cashed. In the course of discovery, Roberts failed to produce evidence of work performed, expenses incurred, or individuals who worked on the

project.   Ultimately, the VoIP system was never implemented, and Roberts refused to return the funds.   Therefore, we find competent, credible evidence that Roberts breached the agreement.

{¶13}   As to the issue of personal liability, to avoid personal liability in the instant case the agent must demonstrate that, as the agent, he disclosed: (1) the agency relationship, and (2) the identity of the principal.  *Indep. Furniture Sales, Inc. v. Martin,* 184 Ohio App.3d 562, 2009-Ohio-5697, 921 N.E.2d 718 (8th Dist.)   If this disclosure is not made, then the agent may be personally liable for contracts entered in his own name. *Id.*, citing *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App.3d 118, 120-121 439 N.E.2d 932 (10th Dist.1981).

{¶14} As the *Everett* court noted, an agent may be held personally liable in situations:

> (2) Where the principal is only partially disclosed, i.e., where the existence of an agency is known to the third person, but the identity of the principal is not known.  Here, the agent is held to be a party to the transaction and is liable to the third party, as is the agent's principal.  *Grob v. Myers* (1926), 4 Ohio Law Abs. 349.  *See also Givner v. United States Hoffman Machinery Corp.* (1935), 49 Ohio App. 410, 18 Ohio Law Abs. 431, 197 N.E. 354.   The reason for the rule is that since the identity of the principal is not known to the third party, he ordinarily will not be willing to rely wholly upon the credit and integrity of an unknown party.
>
> * * *
>
> (4) Where there is a fictitious or nonexistent principal, or the principal is without legal capacity or status.  If an agent purports to act on behalf of such a "principal," the agent will be liable to the third party as a party to the transaction.  *See Trust Co. v. Floyd* (1890), 47 Ohio St. 525, 26 N.E. 110; *Seasongood & Mayer v. Riddle* (1923), 18 Ohio App. 88.  *See also Brawley v. Anderson* (1947), 80 Ohio App. 15, 48 Ohio Law Abs. 250, 74

N.E.2d 428. One cannot be an agent for a nonexistent principal; there is no agency. This situation frequently arises where a corporate promoter enters into contracts prior to the time the corporation is actually incorporated. *See Trust Co.*

{¶15} Applying those principles, the court in *Huskin v. Hall*, 11th Dist. Trumbull No. 2011-T-0048, 2012-Ohio-653, concluded that an individual could be personally liable where he uses a fictitious d.b.a. and also fails to disclose that he is actually acting on behalf of a different principal.

{¶16} Similarly, in this matter, Roberts entered into the agreement using the d.b.a. Citadel Communications, and he stated that this is a "self-employed data VAR solution provider." The designation d.b.a. or "doing business as" simply indicates that a person or a corporation is operating under a fictitious business name. It does not mean the business is a separate and distinct legal entity or that Roberts is not personally liable for the debts incurred by the business. *Schleki v. Beverly*, 8th Dist. Cuyahoga No. 59842, 1992 Ohio App. LEXIS 1198 (Mar. 19, 1992), (Krupansky, J., concurring).

{¶17} Further, Steed testified that Roberts's proposed contract stated "Encompass Technology, Inc.," and she believed she was dealing with an incorporated entity. In any event, Roberts admitted in his deposition that "the company [Encompass] wasn't properly or fully formed when we went forward with the deal to do their phone system, it was done under the Citadel name, the Citadel entity." Under these circumstances, Roberts's use of the Citadel Communications d.b.a. while purporting to act for Encompass Technology, Inc., prior to the actual incorporation of that entity, did not insulate Roberts from personal liability in this matter. The trial court did not err in imposing personal liability.

**{¶18}** In accordance with the foregoing, there is competent, credible evidence to establish that Roberts breached the contract with Re/Max and that he is personally liable. The assignment of error is without merit.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN A. KEOUGH, J., CONCUR