[Cite as *Wells v. Right Choice Contracting, L.L.C.*, 2026-Ohio-117.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MARIO WELLS,                                     :

    Plaintiff-Appellant,              :

                                             No.  114802

    v.                                                :

RIGHT CHOICE CONTRACTING, LLC,  :
ET AL.,

                                              :

    Defendants-Appellees.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                    AND REMANDED
**RELEASED AND JOURNALIZED:**  January 15, 2026

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-23-976984

---

### *Appearances:*

Myers Law, LLC, and Daniel J. Myers, for *appellant*.

McMillan & Sobel, LLC, and Jonathan F. Sobel, *for appellee*.

---

MICHELLE J. SHEEHAN, A.J.:

**{¶ 1}**    In 2020, plaintiff-appellant Mario Wells ("Wells") purchased a home utilizing a Federal Housing Administration ("FHA") sponsored 203(k) rehabilitation loan that provides financing for both the purchase and rehabilitation

of a borrower's primary residence. As part of this federal program, Wells was required to hire a draw inspector to verify progress and quality of construction to demonstrate to the lender that it was appropriate to pay contractors working on the project. Defendant-appellee Keith Bowman ("Bowman") was the draw inspector hired by Wells. Multiple disputes involving several parties took place throughout the construction process culminating in this lawsuit. This appeal only addresses the issues between Wells and Bowman.

{¶ 2} After a bench trial, the trial court found Bowman not liable on all remaining claims asserted against him. Wells appeals raising three assignments of error:

(1) The trial court committed reversable [sic] error when it concluded that the Consumer Sales Practices Act (CSPA) and Summit County Consumer Protection Ordinance (SCCPO) did not apply to the transaction between consumer Mario Wells and his paid consultant Keith Bowman.

(2) The trial court committed reversable [sic] error when it failed and refused to consider or admit the HUD handbook to establish for reasons other than impeachment.

(3) The trial court committed reversable [sic] error when it determined that Keith Bowman did not breach his contract with Mario Wells.

{¶ 3} Based on our review of the record and relevant legal authority, we conclude that the trial court erred in finding the Ohio Consumer Sales Practices Act ("OCSPA") and the Summit County Consumer Protection Ordinance ("SCCPO") inapplicable to this matter on the sole basis that Bowman was not a "supplier" or "person" as defined by the respective statutes. We also find that the trial court did

not abuse its discretion in refusing to admit the FHA/HUD handbook (the "Handbook") for purposes other than impeachment because the Handbook does not provide a basis for a breach-of-contract claim between private individuals. Regarding assignment of error No. 3, we reverse the trial court's decision because its conclusion that Bowman was not liable on Wells's breach-of-contract claim is not based on the contractual agreements existing between Wells and Bowman.

{¶ 4} Accordingly, this matter is affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

## I. Procedural History and Relevant Facts[1]

### A. Factual Background

{¶ 5} In 2020, Wells purchased a home for his family in Cleveland Heights, Ohio through an FHA program known as a "203(k) loan" that provides financing to a borrower for both the purchase and rehabilitation of their primary residence.[2] As part of this process, the FHA requires borrowers such as Wells to hire what is generally referred to as a "HUD consultant." Bowman was the HUD consultant hired by Wells.

---

[1] The underlying lawsuit involves multiple parties and causes of action that have no impact on our resolution of this appeal. Thus, we will limit our discussion to the procedural and substantive facts related to the dispute between Wells and Bowman.

[2] Specifically, the term 203(k) loan refers to HUD-administered loans pursuant to Section 203(k) of the National Housing Act, 12 U.S.C. 1709(k), and the regulations promulgated thereunder. *See generally* 24 C.F.R. 203.440 et seq.

{¶ 6} Bowman had two roles in Wells's 203(k) funded home purchase and rehabilitation (hereinafter referred to as the "project"). Initially, Wells hired him as a "consultant" to perform the initial property inspection and prepare written specifications identifying the type and cost of the repairs and remodeling planned on the project. This information was required by the FHA and the lender to demonstrate the property's suitability for the 203(k) loan program or, in other words, so that Wells could be approved for the 203(k) loan. Bowman's role as a consultant ended once the 203(k) loan was accepted by the FHA and the lender. This dispute does not involve Bowman's actions as a consultant.

{¶ 7} After the closing of the 203(k) loan, Bowman's role on the project transitioned to "draw inspector." In general, as a draw inspector, Bowman periodically inspected the project to verify the progress and quality of the work completed in order to certify to the lender that it was appropriate to pay contractors from the loan proceeds.[3] Bowman prepared and certified three draw requests on this project totaling $41,613. Upon completion of the third draw request, Bowman did no further work on the project.

---

[3] "A 'draw inspection' is an inspection completed and submitted to a bank in order to release funds for disbursement during a home rehabilitation or construction. The draw inspection verifies that certain phases of a home renovation/construction project have been completed and that materials required for renovation/construction are purchased on a specific schedule to keep the project moving. A draw inspection confirms that the construction benchmarks have been completed or, in the alternative, reports what has not been completed in a given time." *Billups v. B.C. Ent. Group, Inc.*, 104 So.3d 577, 578, fn. 2 (4th Cir. La. 2012).

**{¶ 8}** Bowman's actions (or inaction) as the project's draw inspector provide the basis for the dispute between Wells and Bowman. Specifically, Wells contends that Bowman failed to inspect the project, improperly certified work that was not yet completed on the project, or certified work completed but not done in a workmanlike manner. Wells also argues that Bowman failed to ensure that the project had all required permits.

### B.    Procedural History

**{¶ 9}** In March 2023, Wells filed a lawsuit against multiple parties involved in the project including Bowman. Specifically, Wells asserted claims for breach of contract, negligence, violation of the OCSPA, and violation of the SCCPO against Bowman. Bowman filed a counterclaim against Wells for his attorney fees and costs. The underlying matter proceeded with motion practice and discovery.

**{¶ 10}** In November 2024, a bench trial was conducted on the claims asserted by Wells against Bowman as well as his fraud claim against defendant Timothy Kingsbury ("Kingsbury") who worked for one of the mortgage companies involved in this matter. At the conclusion of the bench trial, the parties stipulated to the dismissal of Wells's negligence claim against Bowman. Wells's fraud claim against Kingsbury was dismissed with prejudice. Additionally, Bowman's counterclaim for attorney fees and costs was dismissed pursuant Wells's motion for directed verdict on the grounds that no evidence was offered regarding the claim. Wells's remaining claims against Bowman for breach of contract and violation of the OCSPA and SCCPO were taken under consideration by the trial court. In January

2025, the trial court issued its decision in a six-page opinion finding Bowman not liable on Wells's claims against him. Wells appeals this decision.

## II. Law and Analysis

**{¶ 11}** Our appellate review of a bench trial is as follows:

"In a civil appeal from a bench trial, we apply a manifest weight standard of review, guided by a presumption that the trial court's findings are correct. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). A judgment supported by some competent, credible evidence going to all the material elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Where, however, the trial court's decision is based upon a question of law, we review the trial court's determination of that issue de novo. *See, e.g., Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34 ('Courts review questions of law de novo.'). 'A finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' *Seasons Coal* at 81."

*TLOA Acquisitions, L.L.C. v. Unknown Heirs*, 2021-Ohio-3678, ¶ 11 (8th Dist.), quoting *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, ¶ 19 (8th Dist.).

**{¶ 12}** For ease of discussion, we will first address assignment of error No. 3.

### A. Assignment of Error No. 3 – Breach of Contract

**{¶ 13}** In assignment of error No. 3, Wells argues that the trial court erred in finding Bowman not liable on his breach-of-contract claim. In making this decision, the trial court determined that Wells had not substantially performed his own obligations under the parties' contract. As a result of this finding, the trial court made no further findings of fact or conclusions of law regarding the remaining

elements of the breach-of-contract claim. For the following reasons, we sustain this assignment of error, reverse the decision below, and remand this matter to the trial court for further proceedings consistent with our forthcoming construction and interpretation of the parties' contract.

### 1. General Contract Principles

{¶ 14} "In general terms, a contract is 'an agreement upon sufficient consideration between two or more persons to do or not to do a particular thing.'" *Sheaffer v. Rowland*, 1992 Ohio App. LEXIS 6590, *2 (3d Dist. Dec. 29, 1992), quoting 17 Ohio Jur.3d, Contracts, § 2 (1979). In legal terms, ""'[a] contract is generally defined as a promise, or a set of promises, actionable upon breach.'"" *Rayess v. Educational Comm. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 19, quoting *Kostelnik v. Helper*, 2002-Ohio-2985, quoting *Permuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D. Ohio 1976). A contract is only binding upon the parties to the contract. *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 80 Ohio App.3d 53, 58 (8th Dist. 1992). Further, "only a party to a contract or an intended third-party beneficiary may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House*, 57 Ohio St.3d 158, 161 (1991); *accord Stride Studios, Inc. v. Alsfelder*, 2023-Ohio-1502, ¶ 20 (1st Dist.). "In order for a third person to enforce a promise made for his benefit, it must appear that the contract was made or entered into directly or primarily for the benefit of such third person." *Koster v. Chowdhury*, 2016-Ohio-5704, ¶ 8 (8th Dist.).

**{¶ 15}** To establish a breach-of-contract claim, a party is required to demonstrate that (1) a contract existed; (2) they fulfilled their obligations under the contract; (3) the other party breached their obligations under the contract; and (4) damages resulted from this breach. *See, e.g., Re/Max Crossroads Props. v. Roberts*, 2013-Ohio-5575, ¶ 11 (8th Dist.) (identifying the essential elements of a breach-of-contract claim). The failure to establish any one of these essential elements is fatal to the cause of action. *See, e.g., Brock v. Servpro*, 2022-Ohio-158, ¶ 31 (12th Dist.) (Breach of contract failed because the essential element of damages was not established.). A breach-of-contract claim is generally reviewed under a manifest-weight-of-the-evidence standard. *See, e.g., Schaste Metals v. Tech Heating & Air Conditioning*, 1997 Ohio App. LEXIS 3543, *3-4 (8th Dist. Aug. 7, 1997). However, the construction of a contract and the interpretation of its terms and conditions are questions of law for the court. *Bd. of Cty. Commrs. v. Hardlines Design Co.*, 2021-Ohio-1832, ¶ 8 (2d Dist.), citing *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241 (1978), paragraph one of the syllabus.

**{¶ 16}** "A written contract must be construed and interpreted from its four corners without consideration of parol evidence." *Morris Novak Realty Co. v. Gibbons,* 1993 Ohio App. LEXIS 2684, *8 (8th Dist. May 27, 1993). "If the language of a contract is plain and unambiguous, we must enforce the terms as written, and we may not turn to evidence outside the four corners of the contact to alter its meaning." *Beverage Holding, L.L.C. v. 5701 Lombardo, L.L.C.,* 2019-Ohio-4716, ¶ 13. "If a contract is clear and unambiguous, then its interpretation is a matter of

law and there is no issue of fact to be determined." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984).

{¶ 17} "However, if ambiguities exist, issues of fact arise which may require the court to look outside the four corners of the document." *Std. Elec. Co. v. Bd. of Cty. Commrs.*, 1988 Ohio App. LEXIS 1907, *4 (8th Dist. May 19, 1988). "Terms in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12. "It is generally the role of the fact-finder to resolve any ambiguity in a contract." *Id*. In other words, "whether a contract is ambiguous is a question of law, but the resolution of an ambiguous term in a contract is a question of fact." *Id*.

{¶ 18} With these well-settled guiding principles in mind, we turn to the facts of this case.

### 2. The Existence of a Contract and Its Terms

{¶ 19} The parties do not dispute the existence of a contract between them. Rather, they dispute what document (or documents) constitute the contract between them. They also dispute what contractual obligations they may owe to one another under that agreement. Consequently, we must first determine what document and/or documents govern the parties' contractual relationship as well as the contractual obligations set forth thereunder.

{¶ 20} Throughout this case, the parties as well as the trial court have referred to several documents contained in the 203(k) loan package as purporting to create the contractual obligations between Wells and Bowman. Both the trial court and Bowman primarily rely on the "Rehabilitation Loan Agreement" to impose upon Wells the obligation to ensure that all necessary permits were obtained on the project and to cause all improvements to be made in a workmanlike manner. Indeed, the trial court's conclusion that Wells failed to substantially perform his contract with Bowman is based on his alleged failure to satisfy these terms.

{¶ 21} But our review of the plain and unambiguous language of the Rehabilitation Loan Agreement reveals that it is a contract only between Wells and the lender. Bowman is not a party to the contract. Accordingly, pursuant to well-established law, Bowman is not entitled to enforce any obligations Wells may have had thereunder.[4]

{¶ 22} The same analysis applies to Bowman's reliance on the document titled "203(k) Borrower's Acknowledgement" to support Wells's obligation to ensure proper permits were obtained and to make sure the work done on the project was completed in a workmanlike manner. The plain and unambiguous language of this document also demonstrates that it is not a contract between Bowman and Wells, but rather it is an agreement between Wells and the lender. Again, Bowman is not a party to this contract and, therefore, he has no enforceable rights thereunder.

---

[4] Bowman has not raised the issue of third-party beneficiaries either below or before this court, and we will not address it here now.

{¶ 23} Bowman also refers to the 203(k) loan program document titled "Draw Requests" to demonstrate Wells's contractual obligations to him. Yet, the unambiguous terms of this document reveal that it is not a contract. Specifically, it is not an agreement between Bowman and Wells to do or not to do something. No promises are exchanged between them. Rather, the document is akin to an affidavit where, in this case, Bowman and Wells are independently certifying to the lender the truth of the facts stated in the document — that work on the project is completed, it is completed in a workmanlike manner, and therefore it is appropriate to pay the contractors for their work. Simply put, it is not a contract.

{¶ 24} Our review of the record locates two documents signed by both Bowman and Wells in this matter: "A Consultant's & Client's Limitation of Liability of Agreement" and "Consultant's Allowable Fee Agreement." *See* Appendix. In the "Consultant's & Client's Limitation of Liability Agreement," Bowman agrees to "become[] an inspector for the draws" after the closing of the loan and agrees to "assist the client [Wells] in the preparation of . . . the HUD required form for the draw request." In turn, Wells agrees to pay Bowman for his services. The "Consultant's Allowable Fee Agreement" confirms the work that Bowman will perform on the project and Wells's promise to pay him for his services.

{¶ 25} The unambiguous language of these two agreements demonstrates that they are both contracts and that Wells and Bowman are the parties to these contracts. Notably, neither of these documents expressly incorporates by reference any of the other loan documents either discussed above or elsewhere in the record.

Further, the record demonstrates that there are no other agreements signed by both Wells and Bowman in this case. Accordingly, we find that it is these two documents that constitute the parties' contract.

{¶ 26} Turning to the parties' contractual obligations under these two agreements, we find that the agreements are, in part, ambiguous. Specifically, we conclude that the term "assist" as used in the "Consultant's & Client's Limitation of Liability Agreement" is ambiguous. In other words, the contract is ambiguous as to what "assist" means in reference to Bowman's promise to assist Wells in the preparation the HUD-required form for the draw request. It is unclear from the plain and unambiguous language of the agreement what exactly Bowman agreed to do as part of his assistance. Additionally, it is unclear from the plain and unambiguous language of the agreement what, if any, reciprocal obligations were placed on Wells as part of Bowman's duty to assist him.

{¶ 27} Because the resolution of contract ambiguity is for the factfinder, we remand this matter to the trial court to answer these questions as well as consider the remaining elements of a breach-of-contract claim under these governing documents. In other words, the trial court must first determine what Bowman promised to Wells and, in turn, what Wells promised to Bowman under the Consultant's & Client's Limitation of Liability Agreement and the Consultant's Allowable Fee Agreement. Then, the trial court should determine whether either or both of them performed their respective obligations as well as consider the issue of damages, if any.

{¶ 28} Based on the above, we sustain assignment of error No. 3. The trial court's decision finding Bowman not liable on Wells's breach-of-contract claim is reversed, and this matter is remanded to the trial court for further proceedings consistent with this decision. In particular and in light of the contractual framework set forth above, the trial court should decide what the term "assist" means with regard to the parties' contractual obligations to one another, whether Wells substantially performed his obligations, and whether Bowman breached his obligations as well as consider the issue of damages if necessary.

**B.      Assignment of Error No. 1 – Violation of OCSPA and SCCPO**

{¶ 29} In his first assignment of error, Wells argues that the trial court erred in its determination that Bowman was not a "supplier" as defined by R.C. 1345.01(C) of the OCSPA or a "person" as defined by 759.02(g) of the SCCPO. The trial court's decision is based on its conclusion that the transaction between Wells and Bowman was not for purposes that are primarily personal, family, or household because Bowman's services were for the benefit of the lender and government and not Wells, individually. Therefore, it was not a consumer transaction as defined under these statutes. Because it determined that Bowman was not a supplier or person, the trial court concluded that both laws were inapplicable to the case at bar. Accordingly, the trial court found Bowman not liable and made no further findings of fact or conclusions of law regarding these two claims. We find Wells's first assignment of error well-taken.

**{¶ 30}** Our review of this decision requires us to interpret provisions of both the OCSPA and SCCPO. It is well settled law that the interpretation and construction of statutes involves questions of law that we review de novo. *Clay v. Galita*, 2024-Ohio-833, ¶ 12 (8th Dist.). Absent ambiguity, we must give effect to the plain meaning of the statute and the words used in either must be accorded their usual, normal, and customary meaning. *Id.*, citing *State ex rel. Pennington v. Gundler*, 75 Ohio St.3d 171, 173 (1996); R.C. 1.42. Additionally, the "'Ohio Consumer Sales Practices Act is a remedial law designed to provide various civil remedies to aggrieved consumers and must be liberally construed pursuant to R.C. 1.11.'" (Emphasis deleted.) *Hanna v. Groom*, 2008-Ohio-765, ¶ 34 (10th Dist.), quoting *State ex rel. Celebrezze v. Hughes*, 58 Ohio St.3d 273, 275 (1991).

**{¶ 31}** The OCSPA provides that no "supplier" shall commit an unfair, deceptive, or unconscionable act or practice in connection with a consumer transaction. R.C. 1345.02(A) and 1345.03. Likewise, SCCPO 759.05 prohibits unfair or deceptive trade practices by "persons." These are defined terms under both laws. Because these statutes are nearly identical, we will focus our discussion on the OCSPA.

**{¶ 32}** R.C. 1345.01 defines a "supplier" as follows:

(C) "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer.

In turn, R.C. 1345.01 defines a "consumer transaction" as follows:

(A) "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

These two definitions are intertwined, and both must be satisfied when determining whether Bowman is a supplier under the OCSPA. Specifically, based on the unambiguous language of these two definitions, our determination of whether Bowman was a supplier is dependent upon (1) whether he was a "seller" or "other person" engaged in the business of effecting or soliciting "consumer transactions" (R.C. 1345.01(C)) and (2) whether there was a "sale" of "service" to an individual for "primarily personal, household, or family purposes." (R.C. 1345.01(A)).

### 1. Bowman's Answer

{¶ 33} Wells argues that Bowman admitted his status as a supplier under the OCSPA in his answer. Indeed, "we know it to be elementary in the law of pleading that an admission in a pleading dispenses with proof and is equivalent to proof of the fact." *Duffy v. Cleveland Coin Machine Exchange, Inc.*, 1956 Ohio App. LEXIS 774, *6 (8th Dist. Dec. 6, 1956), citing 3 Jones *Commentaries on Evidence*, § 922 (2d Ed. 1912). "Because 'an admission to a factual allegation in a pleading is equivalent to proof of the fact admitted, the plaintiff does not have to prove that allegation with evidence.'" *State v. Jimenez*, 2023-Ohio-4317, ¶ 18 (8th Dist.), quoting *Lopez v. Quezada*, 2014-Ohio-367, ¶ 12 (10th Dist.). However, "allegations concerning legal conclusions arising from certain facts are not admitted." *PNC Bank*

*v. Kereszturi*, 2015-Ohio-957, ¶ 17 (8th Dist.). In other words, to be binding, "'the admission must be a material and competent fact, not merely a legal conclusion or statutory definition.'" *Ohio Valley Assn. Builders & Constr. v. Rapier Elec., Inc.*, 2014-Ohio-1477, ¶ 36, quoting *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Kingfish Elec., L.L.C.*, 2012-Ohio-2363, ¶ 20 (6th Dist.).

**{¶ 34}** With this authority in mind, we will review the complaint and answer to determine whether Bowman admitted any material and competent facts that may impact whether we conclude the definitional terms of R.C. 1345.01 are satisfied. Paragraphs 5 and 10 of Wells's complaint state:

> (5) Defendant Bowman was the 203k consultant hired by Mario Wells and paid by Mario Wells to provide consulting services and inspection during the project at his home with both Capgro Defendants and Right Choice Defendants . . . .
>
> . . .
>
> (10) Mario Wells is an individual, and a consumer as that term is defined in R.C. 1345.01, who purchased and owned his residence outlined in the caption of the Complaint in Cleveland Heights, Ohio ("Property" or "Project"). Mario is married to Ciearra Wells, and Mario purchased services from various Defendants, except Kingsbury, and he purchased those services primarily for personal, family, or household use.
>
> . . .
>
> (16) Defendant Bowman is a resident of the State of Ohio, and upon information and belief is a 203k consultant. He is in the business of providing services to consumers who are purchasing remodeling services financed by a 203k loan, like Mario Wells. He sold these services to Mario Wells.

In paragraphs 3, 7, and 9 of his answer, Bowman admits these allegations. Additionally, paragraph 17 of Wells's complaint states:

> (17) At all times relevant, all Defendants interacted directly with Mario Wells by communicating with him in writing or otherwise, performing services, charging for services, and otherwise committing the acts or omissions outlined herein.

In paragraph 10 of his answer, Bowman stated, "Defendant Bowman admits that on occasion he interacted directly with Plaintiff Mario Wells and admits performing and charging for services rendered but otherwise denies the allegations contained in said paragraph for want of knowledge."

{¶ 35} Based on these answers, we conclude that Bowman has admitted the following material facts: (1) he was a seller; (2) in the business of; (3) selling services; (4) to individuals; and (5) he sold these services to Wells. *See, e.g., Vannes v. Bigelow*, 1989 Ohio App. LEXIS 2831, *4-5 (6th Dist. July 21, 1989) (defendant admitted to the sale of goods and services in his answer). These admissions of fact partially satisfy the definitional requirement of a "supplier" under the OCSPA. Bowman could not admit that the transaction was "for purposes that are primarily personal, family or household" because that is a legal conclusion that belongs to the court. *See id.* (Court determined whether the sale was for primarily for personal, family, or household purposes.).

## 2. Purposes That Are Primarily Personal, Family, or Household

{¶ 36} The remaining question for us is whether Bowman's sale of his services as an inspector for draws to Wells was "for purposes that are primarily

personal, family, or household." The trial court determined that *Bowman* "did not have a primary purpose of providing real or personal services to a primary individual; rather the 203(k) consultant is providing services to corporate entities insuring a risky investment." However, when answering this question, courts look to the "purpose" manifested by the *purchaser* and not the alleged supplier's purpose in providing the service or good. *See Griffin v. Crestview Cadillac*, 2009-Ohio-6569, ¶ 22 (10th Dist.) (Courts examine the objective manifestations of the purchaser regarding how they intended to use the purchased item.); *Ford Motor Credit Co. v. Ryan*, 2010-Ohio-4601, ¶ 77 (10th Dist.); *Tomas v. George P. Ballas Leasing,* 1986 Ohio App. LEXIS 8463, *9 (6th Dist. Sept. 30, 1986). In other words, it is the motivation of the purchaser for obtaining the good or service that is determinative of its purpose under the statute and not the motivation of the supplier in selling the good or service. Simply put, the question is whether Wells as the purchaser of the good or service intended to use the good or service for business or personal purposes. *See generally Ford Motor Credit Co*. at ¶ 77; *Griffin* at ¶ 21.

{¶ 37} The record below establishes that Wells purchased the subject property with the intent to use it as his family's home. In fact, a 203(k) loan can only be used for the purchase and rehabilitation of a borrower's primary residence. Wells engaged and paid Bowman for his services as part of this process. Specifically, Bowman sold Wells his services as a draw inspector to assist Wells with completing the renovation of his family home in compliance with the requirements of the 203(k)

loan program.  It logically follows that Wells's intent in obtaining Bowman's services was primarily for purposes that were personal, family, or household.

{¶ 38} Further, regarding the trial court's conclusion that Bowman was not a supplier because his services were for the benefit of third parties, we do not interpret the OCSPA so narrowly.  The plain language of the statute does not contain any requirement that the services rendered by a supplier be for the sole benefit of the consumer.  Neither does the trial court nor Bowman offer any Ohio legal authority interpreting the statute in this fashion.  The record below demonstrates that Bowman's services benefited Wells in the purchase and rehabilitation of his home.  Under the unambiguous language of the statute, it is irrelevant that his services may have also benefitted third parties.

{¶ 39} Bowman and the trial court, in part, rely on two cases as support for their conclusion that he is not a supplier.  This court is unpersuaded by either of these cases.  Both *Brown v. Countrywide Home Loans, Inc.*, 319 B.R. 278, 280 (D.C. 2004), and *Diehl-Guerrero v. Hardy Boys Constr., LLC*, 2017 Del.Super. LEXIS 105, *1 (Del. Super. Feb. 28, 2017), involved negligence actions between a homeowner and a HUD consultant in a 203(k) loan program, among other parties.  Specifically, the courts answered whether the HUD consultant owed any duty to the homeowner.  *Brown* at 280; *Diehl-Guerrero* at *1, 5.  Both courts concluded that no duty existed, in part, because the HUD consultant's role was to protect or for the benefit of the government and lender.  *Brown* at 287; *Diehl-Guerrero* at *7-8.  Thus, the negligence actions were dismissed.  *Brown* at 287; *Diehl-Guerrero* at *8.

**{¶ 40}** Both cases were limited to negligent actions. Moreover, neither case involved nor addressed in any fashion similar unfair and deceptive state causes of action. A violation of the OCSPA is a separate and distinct statutory cause of action. Accordingly, we do not find these cases persuasive in determining whether Bowman was a supplier under the OCSPA.

**{¶ 41}** "A violation of the CSPA is premised on the existence of a supplier, a consumer, and a consumer transaction." *Williams v. Edwards*, 129 Ohio App.3d 116, 121 (1st Dist. 1998), citing R.C. 1345.02 and 1345.03. Based on the above, we find that Bowman was a supplier, Wells is a consumer, and the transaction between them constituted a consumer transaction. Accordingly, both the OCSPA and SCCPO were applicable to this matter. The trial court committed reversible error determining otherwise. We sustain Wells's first assignment of error and reverse and remand this matter to the trial court to determine whether the OCSPA and SCCPO were violated.

### C. Assignment of Error No. 2 — Exclusion of the HUD Handbook

**{¶ 42}** In assignment of error No. 2, Wells argues that the trial court abused its discretion in failing to admit the Handbook as additional evidence establishing Bowman's breach of the parties' contract. The trial court addressed this issue in response to a motion in limine filed by Bowman prior to trial. Specifically, Bowman sought to prevent Wells from introducing the Handbook as evidence of any additional contractual duties he may owe to Wells on the grounds that relevant

authority holds that the Handbook does not create a private right of action or provide a basis for a breach-of-contract claim between private individuals. The trial court granted Bowman's motion in limine stating:

> 2) On the issue of the introduction into evidence of the FHA/HUD Handbook, which governs the 203(K) program: The Handbook at issue will be allowed into evidence for the limited purpose of impeachment, not to establish a private cause or action to enforce any requirements of the Handbook.

Based on our review of this issue, we conclude that the trial court did not abuse its discretion and we overrule Wells's second assignment of error.

{¶ 43} "A motion in limine is essentially a request to limit or exclude evidence or testimony at trial." *Sokolovic v. Hamilton*, 2011-Ohio-4638, ¶ 13 (8th Dist.), citing *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist. 1991). "Therefore, the standard of review on appeal of the grant of a motion in limine is whether the trial court abused its discretion." *Id.* An abuse of discretion "implies that the trial court's attitude, in reaching its decision, was arbitrary, unreasonable, or unconscionable." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 34. "Accordingly, absent such evidence, this court must affirm the decision of the trial court." *Sokolovic* at ¶ 13.

{¶ 44} Our review of the relevant legal authority confirms that the Handbook does not provide a private cause of action or a basis for a breach-of-contract claim between private individuals. *Tanner v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 232717, *9-13 (N.D. Ohio Dec. 10, 2020); *see, e.g., M.B. Guran Co. v. Akron*, 546 F.2d 201, 204 (6th Cir. 1976) (concluding the HUD regulations create neither

an express nor implied private right of action); *HSBC Bank USA, Natl. Trust Co. v. Teagarden*, 2013-Ohio-5816, ¶ 41-42 (11th Dist.) (Breach-of-contract claim may exist only if the regulations are expressly incorporated by reference.). Additionally, in instances where the party has argued that the Handbook (or HUD regulations) have been incorporated by reference into the parties' contract, the courts have consistently held that the incorporation must be expressly and clearly made "so as to leave no ambiguity about the identity of the material being referenced, nor any reasonable doubt about the fact that the referenced material is being incorporated into the contract." *Tanner* at *12, citing *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, ¶ 27 (10th Dist.). Further, "incorporation by reference, however, is a term or art, and not every reference is the equivalent to substantive incorporation." *Tanner* at *13, quoting *United States ex rel. Ken's Carpets Unlimited v. Interstate Landscaping Co.*, 1994 U.S. App. LEXIS 24419, *9 (6th Cir. Sept. 6, 1994).[5]

{¶ 45} The above is persuasive authority supporting the trial court's decision to exclude the Handbook. Further, the record demonstrates that the relevant documents governing the parties' contractual relationship do not expressly and

---

[5] In contrast, the authority introduced by Wells in support of admission of the Handbook only address instances where the Handbook may be used as evidence to establish an industry standard of care or practice supporting the existence of a duty in a negligence action. *See, e.g., Soberay v. Greyhound Lines, Inc.*, 2019-Ohio-1371, ¶ 102-105 (8th Dist.); *Chambers v. St. Mary's School,* 82 Ohio St.3d 563, 568 (1998). They do not address introduction of the Handbook within the context of a contract action.

unequivocally incorporate the terms of the Handbook. The Handbook was properly excluded from evidence. Wells's assignment of error No. 2 is overruled.

**{¶ 46}** This matter is affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MICHELLE J. SHEEHAN, ADMINISTRATIVE JUDGE

MICHAEL JOHN RYAN, J., and
ANITA LASTER MAYS, J., CONCUR

# APPENDIX

DocuSign Envelope ID: A6781835-600E-42D9-9245-A924EB2527D0



**Keith Bowman**
**203k HUD Consultant**

Keith Bowman

| Consultant: | Keith Bowman | Consultant Id: P0094 |

## Consultant's Allowable Fee Agreement

Lender: Liberty Home Mortgage          Loan #:

Originator: Stephen J Grabbe          Loan Type: 203k Full

This agreement is entered on  12/14/2020  (DATE), between

Keith Bowman                    (CONSULTANT) and

Mario Wells                     (BUYER) regarding the subject property :

For the sum(s) specified the CONSULTANT agrees to:

1) Meet with Borrower{s) and /or Borrower(s)' Agent(s) and/or Contractor(s) at the subject property address to inspect the physical property, identify areas in need of improvement, and determine overall suitability for FHA's 203(k) Rehabilitation Mortgage Program. A feasibility fee will be due and payable upon completion of these services. This fee will be credited toward the Total Consultant Fee (below) should Borrower(s) decide to continue the application process. All Fees are non-contingent and non-refundable. If upon initial examination it is determined quickly that the needed repairs are unfeasible for the Borrower(s) and/or excessively expensive, the Consultant will NOT perform a full property Inspection and no additional payment will be necessary.

2) With Borrower(s)' input, Consultant will list work items that: A) must be done according to the Program; B) would be recommended to be done at this time by the Consultant or others, and; C) are desired by Borrower(s). From this list, Consultant and Borrower(s) will jointly determine the scope of the work.

3) Produce appropriate documentation in a HUD accepted format, with Draw Request. It is understood that any architectural exhibits do not include certified architectural drawings. If such drawing becomes necessary, all extra costs will be the responsibility of the borrower.

If additional testing services are necessary, these services will either be provided by the Consultant or qualified subcontractors agreed to by both the Consultant and the Borrower; however, the charges for these testing services are in addition to the above Consultant fee. The Consultant will try to estimate all extra charges in advance (see below), and may schedule the additional testing for the borrower(s). The charges, however, will be the sole responsibility of the Borrower(s), and will be due and payable at the time of service.

**Additional Testing Services or Certifications that may be necessary and their estimated charges:**
These services of the Consultant are not to be construed as a home inspection. Those services can be obtained by a licensed Home Inspector. The Consultant's role is not acting as a Home Inspector. FHA does not perform Home Inspections. Home Inspections give the buyer more detailed information about the overall condition of the home prior to purchase.

Electronically Filed 07/30/2024 18:06 / NOTICE / CV 23 976984 / Confirmation Nbr. 3233697 / CLAJB

DocuSign Envelope ID: A6781835-600E-42D9-9245-A924EB2527D0

## Consultant's Allowable Fee Agreement

### Allowable Fee Items

| Allowable Fee Item | Fee Item Note | Fee |
|---|---|---|
| Work Write Up | $400 PAID - Balance Paid at Closing | $800.00 |
| Draw | $350.00 x 5.0 draws | $1750.00 |
| Mileage | $0.58 x 80.0 miles x 5.0 draws | $232.00 |
| HVAC | | $1000.00 |
| Plumbing | | $1000.00 |

*If guaranteeing payment.*
*Signature of Authorized Official of the Lender*

Date

DocuSigned by:

**Borrower Signature**

12/15/2020

Date

DocuSigned by:

*Keith Bowman*

**Consultant/Plan Reviewer's Signature**

12/14/2020

Date

Electronically Filed 07/30/2024 18:06 / NOTICE / CV 23 976984 / Confirmation Nbr. 3233697 / CLAJB

DocuSign Envelope ID: A6781835-600E-42D9-9245-A924EB2527D0

**Keith Bowman**
**203k HUD Consultant**

Keith Bowman

Phone:
Email:

Consultant: Keith Bowman          Consultant Id: P0094

## Consultant's & Client's Limitation of Liability Agreement

| Borrower/Client's Details | Property Details |
|---|---|
| Name: Mario Wells | Address: |
| Phone: | |
| Email: | Loan Num: |

It is mutually understood and agreed to as follows.

### Initial Walk Through

The consultant will accompany the client or his/her agent during the a walk through of the subject property during which the property will be analyzed for compliance with the 203K rehabilitation mortgage insurance program. The consultant will recommend repairs and modifications that in his/her opinion will be necessary to comply with the 203(k) program requirements. The consultant will assist the client in the preparation of the work write up that describes the proposed rehabilitation and the HUD required form for the draw request. The client is not required to use a consultant.

### Inspection

The consultant will incorporate all inspections performed on the property prior to closing. This includes, but is not limited to, the mechanical, engineering, termite report, any home or building inspection reports, and local government inspection reports.

### Agreement Duration

The consultant will perform the services described herein from the date of this agreement to the closing of the loan with the lender at which time the consultant becomes an inspector for the draws. This agreement can be terminated with the approval of the lender by mutual consent of all parties involved.

### Indemnification

Client or Client's shall indemnify, defend (by counsel reasonably acceptable to Consultant) and hold harmless the Consultant and its agents from and against claims, damages, losses, liabilities and expenses, including but not limited to attorneys' fees (collectively, "Damages"), in connection to, or resulting from the performance of any contractor's work set forth in or related to this Specification of Repairs or Material draws released by the lender for up front monies. Including material draws received by the contractor or client.

Client or Client's agree to indemnify, defend and hold harmless the consultant, his employees, and agents of and from all claims, actions, demands for damages received or sustained by any person or persons or property, arising our of or occasioned by the acts of the consultant, or his agents or employees, except in cases of willful misconduct or gross negligence of the consultant, or his agents or employees, for the work performed by the consultant during terms of the agreement and thereafter.

### Fees

The client agrees to pay any fees that are incurred in their behalf by consultant, for such items as; Feasibility Inspection / Walk Through, Feasibility Report, Drawings, Additional Inspections, etc. Client agrees that fees are due as of the date of request, and agrees to pay any interest incurred (at rate allowable by law) that may be due from date of fee request until paid in full. In the event of non-payment client agrees to pay all costs incurred by reason of collection of the fee / GW 23-97694 / Confirmation Nbr. 3233697 / CLAJB

DocuSign Envelope ID: A6781835-600E-42D9-9245-A924EB2527D0

## Consultant's & Client's Limitation of Liability Agreement

**Acceptance and understanding of agreement is hereby acknowledged:**

_[signature]_

Borrower/Client Signature

12/15/2020

Date

_____

Borrower/Client Print Name

_keith Bowman_

Consultant's Signature

12/14/2020

Date

Loan Num: 08201064276

Electronically Filed 07/30/2024 18:06 / NOTICE / CV 23 976984 / Confirmation Nbr. 3233697 / CLAJB